# United States Court of Appeals
## for the
# Third Circuit

---

Case Nos. 16-4012 & 17-1439

---

CRYSTALLEX INTERNATIONAL CORP.,

*Appellee,*

-v-

PETRÓLEOS DE VENEZUELA, S.A.;
PDV HOLDING, INC.; and
CITGO HOLDING, INC., f/k/a PDV America, Inc.,

*Appellant (PDV Holding, Inc.).*

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE DENYING, IN PART, DEFENDANT PDV
HOLDING, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
CIVIL ACTION NO. 1:15-cv-01082-LPS
SAT BELOW: HONORABLE LEONARD P. STARK, U.S.D.J.

---

## APPELLANT PDV HOLDING, INC.'S OPENING BRIEF

---

EIMER STAHL LLP
224 S. MICHIGAN AVE., SUITE 1100
CHICAGO, IL 60604
(312) 660-7600

NATHAN P. EIMER
LISA S. MEYER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 NORTH MARKET STREET
WILMINGTON, DE 19801
(302) 351-9294

KENNETH J. NACHBAR

*Attorneys for Appellant PDV Holding, Inc.*

## United States Court of Appeals for the Third Circuit

### Corporate Disclosure Statement and
### Statement of Financial Interest

No. 17-1439 _____

Crystallex International Corp

v.

Petroleos de Venezuela, S.A.,
PDV Holding, Inc., and
CITGO Holding, Inc., f/k/a PDV America, Inc.

#### Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

## PDV Holding, Inc.

(Name of Party)

1) For non-governmental corporate parties please list all parent corporations: Petroleos de Venezuela, S.A.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Nathan P. Eimer

(Signature of Counsel or Party)

Dated: 5/2/2017

**rev: 09/2014**                    (Page 2 of 2)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION .................................................................................. 1

BACKGROUND ..................................................................................... 4

    A.    Relevant Statutory Scheme:  The FSIA ................................. 4

    B.    Factual and Procedural History .............................................. 7

RELATED CASES AND PROCEEDINGS ............................................ 14

JURISDICTION AND STANDARD OF REVIEW ................................ 16

QUESTIONS CERTIFIED .................................................................... 17

SUMMARY OF THE ARGUMENT ...................................................... 17

ARGUMENT ......................................................................................... 19

    I.    CRYSTALLEX'S DUFTA CLAIM IS PREEMPTED BY
        THE FSIA. ............................................................................... 19

        A.    Federal Preemption ..................................................... 19

        B.    Crystallex's DUFTA Claim Is Expressly Preempted
            by the FSIA .................................................................. 20

        C.    Congress Occupied the Field of Regulating
            Prejudgment Encumbrances of Sovereign Property ... 24

        D.    Crystallex's DUFTA Claim Conflicts with the FSIA
            and Is Therefore Preempted. ........................................ 25

            1.    The Effect of Crystallex's DUFTA Claim
                Contravenes the FSIA. ....................................... 26

            2.    Crystallex's DUFTA Claim Conflicts with the
                Purposes Animating the FSIA. ........................... 33

i

II.    CRYSTALLEX FAILS TO STATE A CLAIM UNDER
        DUFTA. ................................................................................37

CONCLUSION ........................................................................................44

# TABLE OF AUTHORITIES

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.,*
    488 U.S. 428 (1989) .......................................................................... 22, 24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................. 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................. 16

*Bruesewitz v. Wyeth, Inc.,*
    561 F.3d 233 (3d Cir. 2009), *aff'd sub nom., Bruesewitz v. Wyeth
    LLC,* 562 U.S. 223 (2011) ...................................................................... 21

*Cen v. Att'y Gen.,*
    825 F.3d 177 (3d Cir. 2016) ............................................................. 39, 43

*Conn. Bank of Commerce v. Republic of Congo,*
    309 F.3d 240 (5th Cir. 2002), *as amended on denial of reh'g* (Aug.
    29, 2002) .............................................................................................. 33

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.,*
    Civ. A, No. 1:16-cv-00661-RC, 2017 WL 1155691 (D.D.C. March
    25, 2017) .............................................................................................. 14

*Dole Food Co. v. Patrickson,*
    538 U.S. 468 (2003) ......................................................................... 34, 41

*Exp.-Imp. Bank of the Republic of China v. Grenada,*
    768 F.3d 75 (2d Cir. 2014) .................................................................... 31

*Fed. Ins. Co. v. Richard I. Rubin & Co.,*
    12 F.3d 1270 (3d Cir. 1993) .................................................................. 16

*FG Hemisphere Assocs. LLC v. Republique du Congo,*
    455 F.3d 575 (5th Cir. 2006) ................................................................. 16

iii

*Finberg v. Sullivan,*
   634 F.2d 50 (3d Cir. 1980) .................................................................. 26

*Garb v. Republic of Pol.,*
   440 F.3d 579 (2d Cir. 2006) ............................................................. 4, 6

*Grp. Against Smog & Pollution, Inc. v. Shenago, Inc.,*
   810 F.3d 116 (3d Cir. 2016) ................................................................ 17

*Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.,*
   653 F.3d 225 (3d Cir. 2011) ................................................................ 39

*In re Energy Future Holdings Corp.,*
   842 F.3d 247 (3d Cir. 2016) ................................................................ 39

*In re Makowka,*
   754 F.3d 143 (3d Cir. 2014) ................................................................ 39

*In re Plassein Int'l Corp.,*
   366 B.R. 318 (Bankr. D. Del. 2007), *aff'd.* 388 B.R. 46
   (D. Del. 2008), *aff'd* 590 F.3d 252 (3d Cir. 2009) ................................ 40

*In re Wickes Trust,*
   No. Civ. A. 2515-VCS, 2008 WL 4698477
   (Del. Ch. Oct. 16, 2008).............................................................. 39, 42

*Kirschenbaum v. 650 Fifth Avenue & Related Props.,*
   830 F.3d 107 (2d Cir. 2016) .................................................................. 6

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470 (1996) ............................................................... 20, 21, 26

*Menkes v. Prudential Ins. Co. of Am.,*
   762 F.3d 285 (3d Cir. 2014) ................................................................ 28

*Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel,*
   657 F.3d 1159 (11th Cir. 2011)............................................................ 23

*Oss Nokalva, Inc. v. European Space Agency,*
   617 F.3d 756 (3d Cir. 2010) ................................................................ 22

*Peterson v. Islamic Republic of Iran,*
627 F.3d 1117 (9th Cir. 2010) ............................................................. 33

*Phillips v. Cty. of Allegheny,*
515 F.3d 224 (3d Cir. 2008) .................................................................. 37

*Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado,*
771 F.3d 980 (7th Cir. 2014) ............................................. 23, 30, 31, 32

*Quadrant Structured Prods. Co. v. Vertin,*
102 A.3d 155 (Del. Ch. 2014) ............................................................... 11

*Raji v. Bank Sepah-Iran,*
131 Misc.2d 158 (N.Y. Sup. Ct. 1985) ................................................ 23

*Republic of Arg. v. NML Capital, Ltd.,*
134 S. Ct. 2250 (2014) ............................................................. 7, 22, 24

*Republic of Austria v. Altmann,*
541 U.S. 677 (2004) ................................................................................ 4

*Republic of Iraq v. Beaty,*
556 U.S. 848 (2009) ............................................................................. 43

*Republic of Phil. v. Pimentel,*
553 U.S. 851 (2008) ............................................................... 4, 22, 33

*Reserves Mgmt. Corp. v. 30 Lots LLC,*
C.A. No. 08C-08-010 JTV, 2009 WL 4652991
(Del. Super. Ct. Nov. 30, 2009) .......................................................... 40

*Rubin v. The Islamic Republic of Iran,*
637 F.3d 783 (7th Cir. 2011) ............................................................... 16

*S & S Mach. Co. v. Masinexportimport,*
706 F.2d 411 (2d Cir. 1983) ..................................................... 23, 29, 35

*Sikkelee v. Precision Airmotive Corp.,*
822 F.3d 680 (3d Cir.), *cert. denied sub nom. AVCO Corp. v.
Sikkelee,* 137 S. Ct. 495 (2016) ................................................. 19, 24, 26

*Spring Real Estate, LLC v. Echo/RT Holdings, LLC*,
  C.A. 7994-VCN, 2016 WL 769586 (Del. Ch. Feb. 18, 2016), *aff'd*
  *sub nom. Klauder v. ECHO/RT Holdings, LLC*, No. 133, 2016,
  2016 WL 7189917 (Del. Dec. 12, 2016) ................................................ 40

*Stephens v. Nat'l Distillers & Chem. Corp.*,
  69 F.3d 1226 (2d Cir. 1995) ......................................................... 23, 31

*Sugarman v. Aeromexico, Inc.*,
  626 F.2d 270 (3d Cir. 1980) ................................................................ 22

*Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic*
  *Republic*,
  No. 10-cv-5256, 2013 WL 1703873 (S.D.N.Y. Apr. 19, 2013) .............. 30

*Umland v. PLANCO Fin. Servs., Inc.*,
  542 F.3d 59 (3d Cir. 2008) ................................................................. 20

*USX Corp. v. Adriatic Ins. Co.*,
  345 F.3d 190 (3d Cir. 2003) ............................................................... 33

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999) ............................................................ 42

*Weinstein v. Islamic Republic of Iran*,
  831 F.3d 470 (D.C. Cir. 2016) ............................................................ 22

*Williamson v. Mazda Motor of Am., Inc.*,
  562 U.S. 323 (2011) ...................................................................... 19, 26

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ............................................................................ 20

*Zschernig v. Miller*,
  389 U.S. 429 (1968) ............................................................................ 25

## Statutes

28 U.S.C. § 1292(b) ................................................................. 13, 14, 16, 17

28 U.S.C. § 1330(a) .................................................................. 16

28 U.S.C. § 1367.......................................................................... 16

28 U.S.C. § 1602, *et. seq.* ................................................... passim

6 Del. C. § 1301, *et. seq.* ..................................................... passim

## Rules

FED. R. CIV. P. 12(b)(6) ...................................................... 9, 16, 20

## INTRODUCTION

In 2015, Appellee Crystallex International Corporation ("Crystallex") was engaged in arbitration against the Bolivarian Republic of Venezuela ("Venezuela") based on Venezuela's alleged nationalization of Crystallex's gold mining operations. Also in 2015, CITGO Holding, Inc. ("CITGO Holding") conducted a bond offering and declared a dividend to its parent Appellant PDV Holding, Inc. ("PDVH"), which in turn declared a dividend to its parent, Venezuela's state-owned oil company (and alleged alter ego of Venezuela) Petróleos de Venezuela, S.A. ("PDVSA"). Although it had obtained neither an arbitral award nor any U.S. judgment, Crystallex filed suit against PDVSA, PDVH, and CITGO Holding, under the Delaware Uniform Fraudulent Transfer Act, 6 Del. C. § 1301, *et. seq.* ("DUFTA").

Crystallex sued even though it had no business dealings with PDVH or any of the Defendant companies, had not negotiated for any assets of PDVH to be held as security for its contract, and did not allege an alter ego claim against PDVH. Remarkably, it nonetheless asked the District Court to unwind the dividend payment, order the return of the dividends to the United States, and enter an injunction preventing PDVH from incurring any more debt or transferring any more dividends

to PDVSA, or to award billions of dollars in purported damages against PDVH. The District Court permitted Crystallex's DUFTA claim against PDVH to survive a motion to dismiss (although it has properly dismissed the claims against CITGO Holding and PDVSA). This was an error for two reasons.

First, the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et. seq.* ("FSIA"), preempts state fraudulent transfer actions to the extent they may be deployed to impose liability for the transfer of foreign sovereign property or permit a court to enjoin such transfers when the challenged transfers occurred before entry of a judgment confirming a debt against the sovereign. Yet Crystallex's DUFTA claim would do just that by restraining the free movement of allegedly foreign sovereign assets held by PDVH before a U.S. court had confirmed any arbitral award against Venezuela.

Although it is well-settled that the FSIA prevents plaintiffs from utilizing state law to bar foreign sovereigns from transferring their property unless the FSIA's conditions are met, the exact question in this case—the preemptive effect of the FSIA on state fraudulent transfer laws—raises an issue of first impression. The District Court's opinion would eviscerate the FSIA by providing a blueprint for every potential

creditor of a foreign sovereign on how to restrain foreign assets (via damages awards or an injunction) *before* they receive an underlying judgment against the foreign government. Indeed, the District Court itself acknowledged that allowing Crystallex to pursue remedies against PDVH based on a prejudgment transfer could discourage transfers of immunized property—a reality that could reverberate throughout the business and banking communities. Instead, the FSIA envisions what is now occurring in parallel proceedings: that Crystallex would pursue its treaty remedies against Venezuela through an arbitration and, when reduced to judgment, seek to recover on that judgment. Crystallex's attempt to escape this framework by bringing a state law action against the foreign sovereign debtor's U.S. affiliate should be rejected.

Second, Crystallex's claim stretches the plain language of DUFTA past the breaking point. Crystallex has no claim against PDVH or PDVH's assets; its claim is against Venezuela. Nor has Crystallex tried to hold PDVH liable as a "debtor" based on a veil-piercing or alter ego claim. Therefore, PDVH's payment to PDVSA of dividends belonging to PDVSA were not transfers "by a debtor," as required by DUFTA. The District Court's decision to rewrite DUFTA's text in order to extend

liability to non-debtor transferors is erroneous and also should be reversed.

## BACKGROUND

### A. Relevant Statutory Scheme: The FSIA

"The doctrine of foreign sovereign immunity has been recognized since early in the history of our Nation. It is premised upon the perfect equality and absolute independence of sovereigns, and the common interest impelling them to mutual intercourse." *Republic of Phil. v. Pimentel*, 553 U.S. 851, 865 (2008). The doctrine is deeply rooted in the principles of sovereign consent and reciprocity—concepts that form the touchstones of international law. *Garb v. Republic of Pol.*, 440 F.3d 579, 585 (2d Cir. 2006). Giving full effect to sovereign immunity promotes important comity interests and demonstrates respect for the power and dignity of the foreign sovereign. *See Pimentel*, 553 U.S. at 866.

Through the FSIA, Congress enacted a "comprehensive statute containing a set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities." *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (internal quotation marks omitted). The preamble of the FSIA, which lists the law's "[f]indings and declaration of purpose,"

4

specifically states that "henceforth" both federal and state courts should decide claims of sovereign immunity in conformity with the Act's provisions.  28 U.S.C. § 1602 ("Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the [FSIA].").

Section 1609 of the FSIA addresses the immunity of foreign sovereign property, providing that "the property in the United States of a foreign state shall be immune from attachment arrest and execution" to satisfy an existing or anticipated judgment except as specifically provided in Sections 1610 and 1611 of the Act.  28 U.S.C. § 1609.[1]

Before entry of a judgment by a court in the United States against a foreign sovereign, attachment is permitted only if the foreign state has explicitly waived its immunity from prejudgment attachment.  *See id.* § 1610(d).  This provision accords with the traditional notion that courts of the United States will not "degrade the dignity of another nation by asserting jurisdiction over claims affecting the rights of the

---

[1] Sections 1603-1608 of the FSIA address the jurisdictional immunity from suit enjoyed by foreign sovereigns and their agencies or instrumentalities.  In light of Crystallex's allegation that PDVH transferred foreign sovereign *property*, only the property-related provisions (§§ 1609-1611) of the FSIA are at issue in this appeal.

5

foreign sovereign, absent that sovereign's consent." *Garb*, 440 F.3d at 585 (internal quotation marks omitted).

Sections 1610(a)-(b) provide the exceptions for attachment immunity that apply *after* a judgment is entered against a foreign sovereign or instrumentality.[2]  Section 1610(a) exempts from attachment immunity the "property in the United States of a foreign state . . . used for a commercial activity in the United States."  This exception only applies, however, if the plaintiff can prove that one of seven statutory conditions are met.  *Id.* § 1610(a)(1)-(7).  Section 1610(b) sets out an exception to attachment immunity for property of an agency or instrumentality of a foreign state engaged in commercial activity in the United States if the agency or instrumentality (1) has waived its immunity or (2) the judgment relates to a claim for which the agency or instrumentality is not otherwise immune from the court's threshold jurisdiction.  *Id.* § 1610(b)(1)-(3).  These statutory exceptions to attachment immunity apply only to property "in the United States."  *Id.* § 1610 (a), (b).  United States courts generally lack the authority to

---

[2] *See also Kirschenbaum v. 650 Fifth Avenue & Related Props.*, 830 F.3d 107, 123 (2d Cir. 2016) ("[Even] where a valid judgment has been entered against a foreign state, the foreign state's United States property is [still] immune from attachment and execution unless a [§ 1610(a)-(b)] statutory exception applies.").

6

attach or execute against property located in other countries.  *See*

*Republic of Arg. v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2257 (2014).

Even if a § 1610(a) or (b) exception applies, however, no

attachment or execution "shall be permitted until the court has ordered

such attachment and execution after having determined that a

reasonable period of time has elapsed following the entry of judgment

and the giving of any notice required."  28 U.S.C. § 1610(c).[3]

## B. Factual and Procedural History

Crystallex alleges that it is a Canadian company that was

engaged in a gold mining operation in Venezuela until Venezuela

nationalized its gold mines and expropriated Crystallex's assets in

2011.[4]  App. 34-38 at ¶¶ 20-40.  That year, Crystallex initiated an

arbitration proceeding against Venezuela before the World Bank's

International Centre for Settlement of Investment Disputes in

Washington, D.C., based on what it claimed was a violation of a

---

[3] Section 1611 provides certain specific exceptions to § 1609 immunity, none of which are applicable to this case.

[4] Because the Court is reviewing a motion to dismiss, the factual allegations stated by Crystallex in its Complaint are accepted as true.  PDVH reserves the right to challenge such factual assertions should this litigation proceed after this appeal.

bilateral treaty between Canada and Venezuela.[5]  App. 38-39 at ¶¶ 41-46.

The Complaint alleges that, during the pendency of Crystallex's arbitration proceeding against Venezuela, Venezuela's national oil company, Petróleos de Venezuela, S.A. ("PDVSA"), and two of its U.S. subsidiaries, Appellant PDVH and CITGO Holding, Inc. ("CITGO Holding"),[6] conducted a series of dividend transfers that form the primary basis of this litigation.  App. 41 at ¶ 54.  CITGO Holding borrowed money in a bond offering and then declared dividends to its corporate parent, PDVH, in the amount of the bond offering.  App. 42-43 at ¶¶ 56-59.  PDVH in turn declared dividends to its parent, PDVSA. App. 43 at ¶ 60.  Crystallex alleges PDVSA then transferred these funds to Venezuela.  *Id.*

Even though it had not yet obtained an arbitration award against Venezuela—much less a U.S. judgment based on such an award—

---

[5] The particulars of the gold mining dispute and the merits of Crystallex's arbitration action are of no relevance to the purely legal issues on which this appeal turns.

[6] PDVSA is incorporated under the laws of Venezuela and functions as an "instrumentality" of Venezuela, as defined by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603.  PDVH is a Delaware corporation and is PDVSA's wholly-owned subsidiary.  CITGO Holding is also a Delaware corporation and is PDVH's wholly-owned subsidiary.

Crystallex filed this suit in November 2015 against PDVSA, PDVH, and

CITGO Holding, alleging that the dividend transfers amounted to

(1) fraudulent conveyances under DUFTA and (2) common-law civil

conspiracy.  App. 61-65 at ¶¶ 159-170.  Crystallex alleged—in its

capacity "as an existing and future creditor of Venezuela"—that the

dividend transfers were directed by Venezuela through its putative

alter ego PDVSA in order to expropriate funds from the United States

so as to hinder Crystallex from executing on what Crystallex

anticipated would be a substantial arbitration award.  App. 29-31 at

¶¶ 1-6.

On February 3, 2016, PDVH and CITGO Holding (together, "the

CITGO Defendants") moved to dismiss for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6).[7]  The CITGO Defendants

argued that Crystallex had not stated a claim under DUFTA because

the allegedly fraudulent transfers were not made "by a debtor," 6 Del.

C. § 1304(a), and did not involve "property of a debtor," id. § 1301(2),

---

[7] On July 25, 2016, PDVSA separately moved to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.  On May 1, 2017, the District Court granted PDVSA's motion in full, concluding that, pursuant to the FSIA, it lacked subject matter jurisdiction to adjudicate Crystallex's DUFTA claim against PDVSA.  App. 79-93.

9

(12). Instead, the CITGO Defendants argued, the transfers were made by CITGO Holding and PDVH, neither of which was alleged to be a debtor of Crystallex or an alter ego of Venezuela, and involved the property of CITGO Holding and PDVH, not the property of Venezuela.

The CITGO Defendants also argued that, to the extent that the alleged transfers did involve the debtor's property (that is, declared dividends belonging to Venezuela's alleged alter ego, PDVSA), the DUFTA claim was preempted by the attachment immunity provisions of the FSIA. The CITGO Defendants contended that, because the dividend transfer occurred in 2015, well before any arbitral award had been issued, much less confirmed by a U.S. court judgment, Crystallex's attempt to encumber foreign sovereign funds and impose liability via state fraudulent transfer law was an impermissible end-run around FSIA attachment immunity. In addition, the CITGO Defendants argued that Crystallex had not stated a claim for civil conspiracy and that the act of state doctrine barred its claims.

On September 30, 2016, the District Court issued its Memorandum Opinion and Order granting in part and denying in part the CITGO Defendants' motion to dismiss. App. 1, 2. The District Court dismissed all but one of Crystallex's claims, including the civil

conspiracy claim against both defendants and the DUFTA claim against CITGO Holding.  App. 14-16.  The District Court agreed that DUFTA did not apply to a transfer of CITGO Holding's or PDVH's property, and that there was no viable claim for civil conspiracy under Delaware law.[8] However, the District Court declined to dismiss the DUFTA claim against PDVH.  App. 14.  First, the District Court held that the transfer of a declared dividend from PDVH to PDVSA involved "property of a debtor."  Specifically, the District Court reasoned that because the announced-but-not-yet-transferred dividends were, by law, property of the dividend recipient (PDVSA),[9] PDVH—even if only for a moment—held property that belonged to PDVSA.  App. 10-11.

Second, the District Court held that, although the transfer of dividends from PDVH to PDVSA was not "directly" executed "by a debtor," Crystallex's allegation that the dividend payment was "orchestrated by and carried-out under orders from Venezuela and/or

---

[8] The civil conspiracy claims were dismissed as contrary to Delaware law. App. 15 (citing *Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014)).  Crystallex's DUFTA claim against CITGO Holding was dismissed because CITGO Holding's dividend transfer to PDVH did not involve any property of PDVSA or Venezuela and because, absent allegations calling for a piercing of the corporate veil, CITGO Holding could not be held liable for the actions of its parent companies.  App. 13-14.  These holdings are not at issue on appeal.

[9] PDVH does not challenge this legal analysis on appeal.

[PDVSA]" was sufficient to meet DUFTA's requirement that a transfer be made "by a debtor." App. 11-12. Thus, admitting that Crystallex's "DUFTA claim [against PDVH] strains the statute's structure," App. 14, the District Court nonetheless embraced this "unprecedented fraudulent transfer theory," App. 71, to hold that Crystallex had stated a fraudulent transfer claim against PDVH as a "non-debtor transferor." App. 13.

Third, the District Court rejected PDVH's argument that the FSIA preempts Crystallex's DUFTA claim, erroneously focusing on its own potential judgment in the present DUFTA action rather than a judgment confirming Crystallex's arbitration award against Venezuela. App. 18. The District Court also reasoned that, even though the transfer of allegedly sovereign property took place prior to the entry of judgment against Venezuela and, therefore, the property at issue was "immune from attachment when the transfer was made," App. 17, PDVH could still face liability for its prejudgment transfer of sovereign property, because "[p]ursuing a remedy based on a prejudgment transfer is not the same as attaching funds prior to the entry of judgment, even if the pursuit of that remedy might discourage transfers of immunized property under certain circumstances," App. 18-19.

Although the District Court deferred ruling on whether it could award damages based on an immune but allegedly fraudulent prejudgment transfer, it saw no reason why PDVH might not be enjoined from further transfers "[a]ssuming that Plaintiff obtains a final judgment on the merits" of its DUFTA claim. This signaled that the District Court believed it could restrain transfers of foreign sovereign property to the extent those transfers involve, like here, the declaration of dividends to PDVSA.[10] App. 20.

PDVH filed two appeals. First, it filed an immediate appeal on the FSIA issue pursuant to the collateral order doctrine (C.A. No. 16-4012). App. 23. In order to ensure that the related DUFTA issue was brought to this Court simultaneously, PDVH also filed a motion to certify the District Court's Order for interlocutory review pursuant to 28 U.S.C. § 1292(b). Specifically, the § 1292(b) petition sought review of the District Court's holdings on both the preemptive effect of the FSIA and on its novel extension of DUFTA liability to "non-debtor transferors." After briefing and oral argument, the District Court

---

[10] Not relevant to this appeal, the District Court also declined to apply the act of state doctrine at this stage of the proceedings. App. 21-22. PDVH reserves the right to make arguments related to the act of state doctrine should this matter be remanded to the District Court.

granted PDVH's § 1292(b) motion in full on December 27, 2016, App. 69,

and this Court accepted PDVH's petition for permissive review on

February 10, 2017.  App. 25, 28.[11]  The two appeals have been

consolidated for all purposes going forward.

## RELATED CASES AND PROCEEDINGS

In April 2016, while the CITGO Defendants' motion to dismiss

was pending, an arbitration award was issued in Crystallex's favor.

The United States District Court for the District of Columbia confirmed

that award in an opinion issued on March 25, 2017, and a judgment

issued on April 7, 2017 (hereinafter "the D.C. Judgment").  *Crystallex*

*Int'l Corp. v. Bolivarian Republic of Venez.*, Civ. A, No. 1:16-cv-00661-

RC, 2017 WL 1155691, at *2, *14 (D.D.C. March 25, 2017); *Crystallex*

*Int'l Corp. v. Bolivarian Republic of Venez.*, Civ. A, No. 1:16-cv-00661-

RC, ECF No. 33 (D.D.C. Apr. 7, 2017).  The later-arising award and

judgment do not change the fact that the allegedly fraudulent dividend

transfers were made in 2015, well before the D.C. Judgment, and are

thus immune under Section 1609.

---

[11] The Court first assigned PDVH's § 1292(b) petition the case number 17-8001, but, upon granting the petition, reassigned the appeal with the case number 17-1439.

Moreover, three other cases pending in the District of Delaware are implicated by the District Court's decision, each of which may be affected should this Court reverse the District Court's Order. First, Crystallex filed a second DUFTA suit against PDVH on October 28, 2016, based on a transfer that occurred after the litigation in this matter had begun. *Crystallex Int'l Corp. v. PDV Holding, Inc.*, No. 1:16-cv-01007-LPS (D. Del.) ("*Crystallex II*"). In *Crystallex II*, Crystallex's sole ground for alleging the required creditor-debtor relationship between it and PDVH is the pending litigation in *this matter* ("*Crystallex I*"). In other words, the claim against PDVH in *Crystallex II* is predicated on the existence of *Crystallex I*; if *Crystallex I* is dismissed against PDVH, *Crystallex II* falls apart. Second, in *ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela S.A.*, No. 1:16-cv-00904 (D. Del.) ("*ConocoPhillips I*"), different plaintiffs assert substantially similar DUFTA claims against largely the same defendants in this action based, in part, on the same dividend transfers and similar theories of liability. Third, the *ConocoPhillips I* plaintiffs later filed *ConocoPhillips II*, No. 1:17-cv-00028-LPS (D. Del.), which, like *Crystallex II*, turns in large part on the viability of its predecessor case's claim under DUFTA.

15

Finally, as referenced above, on July 25, 2016, PDVSA filed a separate motion to dismiss the DUFTA claim against it in this action. On May 1, 2017, the District Court granted PDVSA's motion in full, concluding that, pursuant to the FSIA, it lacked subject matter jurisdiction to adjudicate Crystallex's DUFTA claim against PDVSA. App. 79-93.

## JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1330(a), 1367, and this Court has jurisdiction to hear this interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and the collateral order doctrine.[12]  This Court reviews a denial of a Rule 12(b)(6) motion *de novo*, using the familiar framework spelled out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007): The Court must determine whether, taking all of Crystallex's well-pleaded factual allegations as true, its Complaint "state[s] a claim to relief that is plausible on its face." *Grp.*

---

[12] *Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 790 (7th Cir. 2011) ("There is no reason the collateral-order doctrine should apply any differently in cases raising the attachment immunity of foreign-state property under § 1609 than in cases raising foreign-state jurisdictional immunity under § 1604."); *FG Hemisphere Assocs. LLC v. Republique du Congo*, 455 F.3d 575, 584 (5th Cir. 2006) ("The district court's denial of immunity under [§ 1609 of] the FSIA is immediately appealable under the collateral order doctrine."); *see also Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1279-1282 (3d Cir. 1993) (applying the collateral order doctrine to a district court's denials of jurisdictional immunity under the FSIA).

*Against Smog & Pollution, Inc. v. Shenago, Inc.*, 810 F.3d 116, 127 (3d

Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## QUESTIONS CERTIFIED

For purposes of reviewing PDVH's motion to dismiss, the District

Court certified, and this Court accepted, the following two questions for

interlocutory review:

1. Whether the FSIA attachment immunity provisions, 28 U.S.C. §§ 1609-1611, preempt state fraudulent transfer laws to the extent that they effectively restrain immunized property of a foreign sovereign debtor or impose liability on non-debtor transferors for prejudgment transfers of immunized property.

2. Whether the phrase "by a debtor" in DUFTA, 6 Del. C. § 1304(a)(1), applies to "non-debtor transferors" deemed to be acting on the debtor's behalf, absent allegations of alter ego or piercing the corporate veil.[13]

## SUMMARY OF THE ARGUMENT

1.     The District Court erred in holding that Crystallex's state law

fraudulent transfer claim against PDVH is not preempted by the FSIA's

attachment immunity provisions.  The FSIA sets forth the exclusive

means by which a plaintiff may restrain foreign sovereign property in

U.S. Courts.  Because Crystallex sought to use DUFTA to encumber

---

[13] These two questions are lifted verbatim from the District Court's Order granting PDVH's motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  App. 74.

allegedly foreign sovereign assets before obtaining a judgment against Venezuela, its effort to bypass the strictures of the FSIA is precluded by the Supremacy Clause of the United States Constitution. Crystallex's stratagem runs contrary to the text of the FSIA, flouts the congressional purpose undergirding attachment immunity, and is ultimately preempted pursuant to the doctrines of express preemption, implied field preemption, and implied conflict preemption. Accordingly, Crystallex's DUFTA claim against PDVH must be dismissed.

2.      The District Court also erred in holding that Crystallex stated a claim against PDVH under Delaware law. DUFTA requires that an allegedly fraudulent transfer be made "by a debtor" and provides for claims only against the debtor and transferees. PDVH—the U.S. subsidiary of Venezuela's national oil company—is alleged to be neither a debtor nor a transferee, and Crystallex nowhere alleged that the corporate veil between PDVH and its parent should or could be pierced. Accordingly, Crystallex has failed to allege the elements necessary to state a DUFTA claim against PDVH, and the District Court's novel approach of conferring DUFTA liability on "non-debtor transferors" should be reversed.

# ARGUMENT

## I.    CRYSTALLEX'S DUFTA CLAIM IS PREEMPTED BY THE FSIA.

### A. Federal Preemption

Where Congress has laid out an exclusive and comprehensive statutory framework, the Supremacy Clause dictates that a contrary state law claim is preempted and cannot proceed. *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 687-88 (3d Cir.), *cert. denied sub nom. AVCO Corp. v. Sikkelee*, 137 S. Ct. 495 (2016). Congress can preempt state law by stating so expressly or by implication. *Id.* Implied preemption exists where (1) federal law indicates congressional intent to "occupy an entire field" or (2) a state law "conflicts with federal law such that compliance with both state and federal [law] is impossible" or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of a federal law." *Id.* (quoting *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011)). Because "[c]ongressional intent is the 'ultimate touchstone' of a preemption analysis," a court must "look to the language, structure and purpose of the relevant statutory . . . scheme" to understand "the way in which Congress intended the statute" to function. *Id.* at 687 (first quoting

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009), then quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996)).

Although courts are uniform in holding that the FSIA bars any state law, court order, or process to the extent that it would operate as a restraint on the transfer or negotiation of sovereign property outside the framework prescribed by the FSIA, see *infra* at 22-24, no case has addressed the exact question at issue in this case: the preemptive effect of the FSIA on state fraudulent transfer laws that restrain sovereign property.  As explained below, Crystallex's DUFTA claim runs afoul of the express language of and congressional intent behind the FSIA, and thus is expressly preempted and impliedly preempted.  Accordingly, under Federal Rule of Civil Procedure 12(b)(6), the claim against PDVH should be dismissed.  *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 67-69 (3d Cir. 2008) (observing that a preempted state law claim warrants dismissal under Rule 12(b)(6)).

## B. Crystallex's DUFTA Claim Is Expressly Preempted by the FSIA.

Crystallex's efforts to use DUFTA to restrain foreign sovereign property and to impose liability for the prejudgment transfer of foreign sovereign property are expressly preempted by Sections 1602 and 1609

20

of the FSIA, which provide that foreign sovereign property in the United States "*shall* be immune from attachment" except as otherwise provided by federal law, and that "[c]laims of foreign states to immunity should henceforth be decided by courts of the United States and *of the States* in conformity with the [FSIA]."  28 U.S.C. §§ 1602, 1609 (emphasis added).  These provisions expressly state Congress's intent that foreign sovereign property be immune from attachments or encumbrances under state law.  *See Bruesewitz v. Wyeth, Inc.*, 561 F.3d 233, 242 (3d Cir. 2009), *aff'd sub nom.*, *Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) (observing that express preemption applies where a statute makes clear that "Congress has set forth an area in which state law may not operate").

After identifying an express preemption clause, the Court must "identify the domain expressly pre-empted" by such language, which necessarily requires an analysis of congressional purpose.  *Id.* at 243 (quoting *Medtronic*, 518 U.S. at 484).  As the Supreme Court has made clear, the FSIA is a comprehensive federal statute that provides the sole and exclusive basis for obtaining jurisdiction over, and attaching or executing upon the property of, a foreign state or an instrumentality of

a foreign state within the United States.[14]  *Republic of Arg.*, 134 S. Ct. at 2255–56.  In setting a uniform standard, Congress intended the FSIA to codify the United States' respect for the dignity and power of foreign sovereigns and to promote international comity. *See Pimentel*, 553 U.S. at 865-66.

A key means by which the FSIA achieves that goal is by ensuring that foreign sovereign property will not be encumbered prejudgment, even through otherwise valid litigation processes, absent the consent of the sovereign.  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 435 n.3 (1989) (describing attachment immunity as part of the FSIA's "comprehensive statutory scheme").  Accordingly, all state laws purporting to set forth or authorize any other rules governing suits against sovereigns or their property are preempted.

Crystallex's DUFTA claim is an attempt to restrain allegedly foreign sovereign property and to impose liability based on a

---

[14] This Court has had many opportunities to discuss the FSIA's jurisdictional immunity provisions (28 U.S.C. §§ 1603-1608), *e.g.*, *Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 762 (3d Cir. 2010); *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 272 (3d Cir. 1980), but has not issued a precedential decision in a case that required it to tackle the attachment immunity provisions at issue here (28 U.S.C. §§ 1609-1611).  *Cf. Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 482 (D.C. Cir. 2016) (recognizing that "attachment immunity is not 'jurisdictional'" in nature.).

prejudgment transfer of foreign sovereign property expressly declared immune from restraint by federal law. It is, in this respect, no different from the many other state laws, court processes, orders, or provisional remedies that other courts have declared preempted or otherwise barred because they would deprive a foreign state of dominion or control over its property before issuance of a judgment. *See Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 984 (7th Cir. 2014) (holding Illinois law requiring insurers to post prejudgment security in actions against them prohibited as a prejudgment attachment under the FSIA because attachment immunity "should turn on [an action's] effect—rather than its procedural particulars"); *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1179 (11th Cir. 2011) (holding prior common law procedures governing attachment immunity preempted by the FSIA); *Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226, 1229 (2d Cir. 1995) (holding prejudgment security requirement preempted); *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983) (vacating injunction against negotiation of letters of credit as contrary to FSIA's prohibition on prejudgment attachment); *Raji v. Bank Sepah-Iran*, 131 Misc.2d 158, 162 (N.Y. Sup. Ct. 1985) (observing that

Congress's intent was "to encompass all encumbrances and restraints imposed to prevent the dissipation of assets before judgment"; thus, all "provisional remedies available under state law" are barred by the FSIA, including a stay against the removal or dissipation of assets).

### C. Congress Occupied the Field of Regulating Prejudgment Encumbrances of Sovereign Property.

Crystallex's DUFTA claim also is preempted under a field preemption analysis. The Supreme Court has repeatedly characterized the FSIA—including both its jurisdictional and attachment immunity provisions—as a "comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state." *Republic of Arg.*, 134 S. Ct. at 2255-56 (collecting cases); *Argentine Republic*, 488 U.S. at 435 n.3. In enacting the FSIA, "Congress abated the bedlam" in existence before, "replacing the old executive-driven, factor-intensive, loosely common-law-based immunity regime." *Id.* In other words, Congress chose to wipe away all other mechanisms for asserting immunity—either from suit or over sovereign property—and thereby "express[ed] an intent to occupy [the] entire field," which "foreclosed [States] from adopting any [law] in the area." *Sikkelee*, 822 F.3d at 688. Thus, Crystallex's only appropriate avenue to encumber allegedly

24

foreign sovereign property is via the FSIA, meaning that its efforts to use DUFTA's provisions instead improperly invade territory reserved exclusively by Congress for federal law.

The Supreme Court has also stated that the entire arena of foreign affairs is governed solely by federal law, meaning that field preemption would apply to block any effort by Crystallex to use DUFTA in a way that could infringe upon Congress's exclusive domain of foreign affairs—including by trying to evade the strictures of the FSIA. *See Zschernig v. Miller*, 389 U.S. 429, 432 (1968) (plurality opinion) (holding a state law preempted even absent any affirmative federal activity in the subject area of the state law because of its "intrusion by the State into the field of foreign affairs which the Constitution entrusts to the President and Congress"); *id.* at 442 (Stewart, J., concurring) (referring to foreign affairs as "a domain of exclusively federal competence").

### D. Crystallex's DUFTA Claim Conflicts with the FSIA and Is Therefore Preempted.

Crystallex's DUFTA claim also is preempted under a conflict preemption analysis, because it conflicts with the immunities provided by the FSIA and therefore "stands as an obstacle to the accomplishment

and execution of the full purposes and objectives of a federal law."

*Sikkelee*, 822 F.3d at 688 (quoting *Williamson*, 562 U.S. at 330).

### 1. The Effect of Crystallex's DUFTA Claim Contravenes the FSIA.

Permitting a plaintiff to bring a fraudulent transfer claim based on the prejudgment transfer of allegedly foreign sovereign property would have the effect of restraining sovereign property in a way contrary to FSIA attachment immunity—even if not via a formal writ of execution or attachment. Where "the net effect" of a state law "bring[s] about precisely the consequences that Congress sought to prevent," such laws are conflict preempted. *Finberg v. Sullivan*, 634 F.2d 50, 63 (3d Cir. 1980) (holding a state postjudgment garnishment law preempted by the federal Social Security Act because it frustrated the federal law's purpose in exempting Social Security benefits from "execution, levy, attachment, garnishment, or other legal process"). In this case, because Crystallex's creative DUFTA claim would have the effect of encumbering property in violation of the FSIA, it poses an obstacle to ensuring that federal law functions "the way in which Congress intended," *Sikkelee*, 822 F.3d at 687 (quoting *Medtronic*, 518 U.S. at 486).

26

Under DUFTA, a creditor has recourse to a variety of remedies designed to recover transferred property and to restrain the dissipation of property to which the creditor has a present or putative right. These include the avoidance of the transfer or obligation, an "attachment or other provisional remedy against the asset transferred or other property of the transferee," an "injunction against further disposition by the debtor or a transferee," "[a]ppointment of a receiver to take charge of the asset transferred," and, potentially, damages. 6 Del. C. § 1307(a)(1)-(3).

Crystallex has sought precisely these remedies, despite the fact that, at the time the Complaint was filed, Crystallex had not yet obtained a judgment against its debtor, Venezuela. In its Complaint, Crystallex seeks an order directing Venezuela's alleged alter ego, PDVSA, to return the transferred dividend to PDVH, an injunction barring PDVH from transferring any portion of PDVSA's dividend remaining in the United States to PDVSA, an injunction enjoining any additional transfers by PDVH (or CITGO Holding) to PDVSA, Venezuela or any other entity outside the United States, and, in the alternative, an award of damages against the named defendants in the amount of its arbitral award. App. 64-65 at ¶ 164; App. 66.

27

Under the FSIA, however, Crystallex has no right to encumber or attach the property of a foreign state before issuance of a judgment on its underlying liability unless the foreign state has explicitly waived immunity from prejudgment attachment of its assets—a waiver Venezuela has never undertaken.[15]  28 U.S.C. § 1610(d); *see supra* at 4-7 (discussing the FSIA's statutory scheme).  To the extent that DUFTA creates a right in Crystallex to restrain Venezuela's property transferred prejudgment[16] or a duty upon any party to preserve Venezuela's assets within the United States, it is preempted by Congress's determination—as embodied by Section 1609 of the FSIA— that U.S. courts may not interfere with a foreign state's use and disposition of its property before issuance of a valid and enforceable judgment.  *E.g.*, *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014) (holding state law conflict preempted to the extent it

---

[15] Crystallex has not alleged such a waiver in either the treaty between Venezuela and Canada under which it initiated arbitration or its mining lease with Venezuela.

[16] As noted earlier, the District Court—and Crystallex—misunderstood the relevant judgment for FSIA purposes, focusing on a judgment on Crystallex's DUFTA claim, rather than a judgment confirming Venezuela's liability (and arbitral award) under the Canadian-Venezuelan bilateral treaty, which is the only judgment sufficient to generate a debtor-creditor relationship between Crystallex and Venezuela.  In seeking to encumber allegedly foreign sovereign property transferred at a time *before* any judgment on liability existed, Crystallex's DUFTA claim contravenes the FSIA.

afforded a claim or a remedy in conflict with the purpose or objectives of a federal statute). This Court should follow its sister Circuits, which have set aside state laws where—as here—such laws would clearly conflict with this federal policy.

The common theme of the Second and Seventh Circuits' jurisprudence on this issue is that even where a plaintiff is not formally seeking to "attach" foreign sovereign property, any state law or court order that would have the *effect* of restraining sovereign property prior to entry of a valid judgment falls within the ambit of the § 1609. In *S & S Machinery*, the district court had initially issued an injunction against further negotiation of letters of credit by a foreign-owned bank and a foreign-owned trading company. 706 F.2d at 412-13. The district court later dissolved the injunction as contrary to § 1609 of the FSIA, and the Second Circuit affirmed, concluding that the "FSIA would become meaningless if courts could eviscerate its protections merely by denominating their restraints as injunctions against the negotiation or use of property rather than as attachments of that property." *Id.* at 418. Once a court concludes that an entity is "protected from prejudgment attachment by the FSIA," the Second Circuit held, it must not "sanction any other means to *effect* the same result." *Id.* (emphasis

added); *accord Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10-cv-5256, 2013 WL 1703873, at *3 (S.D.N.Y. Apr. 19, 2013) (applying "FSIA immunity to remedies that are the functional equivalent of attachment").

The Seventh Circuit's recent decision in *Pine Top Receivables* likewise applied the FSIA's attachment immunity provision to a court order other than a formal order of attachment. There, the plaintiff sued a bank wholly owned by the nation of Uruguay for breach of contract; after the bank filed an answer, the plaintiff sought to strike the answer for failure to comply with an Illinois state law requiring a defendant to post a pre-answer security in the full amount of the disputed debt. 771 F.3d at 981-82. The bank argued such a requirement violated § 1609, and the Seventh Circuit agreed, pointing to language in § 1610(d) that refers to "the *purpose* of the attachment [being] to secure satisfaction of a judgment . . . entered against the foreign state[.]" *Id.* at 983 (quoting § 1610(d)) (emphasis added). In order to avoid rendering such language superfluous, the court concluded that determining whether an action "is barred by FSIA [attachment] immunity should turn on that [action's] effect." *Id.* at 984. Applying this analysis, the Court deemed the Illinois law requiring a sovereign to post prejudgment security to be

incompatible with the FSIA. *Id.* at 984, 993; *accord Stephens*, 69 F.3d at 1229 (finding a similar law in New York barred by the FSIA).

Like in the cases described above, the equitable DUFTA remedies Crystallex has sought here against PDVH plainly conflict with the FSIA. Such remedies would have the effect of barring the transfer of allegedly sovereign property. Under the FSIA, Crystallex thus had no right to invoke DUFTA to restrain Venezuela from removing its property from the United States—much less nullify the sovereign's completed transfers—before entry of a judgment against the sovereign, even if such immunity might frustrate Crystallex's later ability to collect upon any judgment it obtained. *Cf. Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 87 & n.12 (2d Cir. 2014) (refusing to order a sovereign to return funds it had removed from the United States during the pendency of an action seeking to restrain such funds).

Crystallex's claim for damages is likewise preempted by the FSIA, as the imposition of damages liability on a party for the transfer of sovereign property is the functional equivalent of arresting or attaching the sovereign's property. Indeed, a prejudgment damages award is likely to be more effective at arresting sovereign property than an order

31

of attachment, as entities in possession of sovereign property will not want to expose themselves to the prospect of billions of dollars in liability. Imposing damages liability on parties that transfer sovereign property will have the predictable effect of immobilizing that property. The District Court recognized this, noting a damages award in this case may well discourage additional transfers of sovereign property—even where unquestionably immune—for fear of exposure to a damages claim. App. 18-19 (acknowledging that a DUFTA remedy "might discourage transfers of immunized property").

Accordingly, the *effect* of an award of damages based on the prejudgment transfer of sovereign property would be equivalent to, or perhaps even more intrusive, than an order attaching the property. Hence, because FSIA attachment immunity turns "on [an action's] effect," *Pine Top Receivables*, 771 F.3d at 984, any damages award in this case based on PDVH's allegedly fraudulent transfer in 2015—which Crystallex claims is premised on the arbitral award against Venezuela for its expropriation of Crystallex's gold mining investments—would amount to a prejudgment restraint on the disposition of foreign property barred by the FSIA.

## 2. Crystallex's DUFTA Claim Conflicts with the Purposes Animating the FSIA.

Permitting Crystallex's end-run around the FSIA would also flout Congress's purpose in creating FSIA attachment immunity: codifying comity for foreign nations and preserving the dignity of foreign sovereigns by preventing creditors from encumbering sovereign property with prejudgment restraints. *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1127 (9th Cir. 2010) (noting that judicial interference with the property of a foreign state "may be regarded as an affront to its dignity and may affect our relations with it" (quoting *Republic of Phil. v. Pimentel*, 553 U.S. 851 (2008)); *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 253 (5th Cir. 2002), *as amended on denial of reh'g* (Aug. 29, 2002) ("One of the chief motifs of the FSIA is to limit as much as possible disrupting the 'public acts' or '*jure imperii*' of sovereigns"). This same respect for the dignity of foreign sovereigns is also the driving force behind the FSIA's jurisdictional immunity provisions. *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 207 (3d Cir. 2003) ("A primary purpose of the FSIA is to make it difficult for private litigants to bring foreign governments into court, thereby avoiding affronting them."); *see also Dole Food Co. v.*

33

*Patrickson*, 538 U.S. 468, 479 (2003) ("[The FSIA is] meant . . . to give foreign states and their instrumentalities some protection from the inconvenience of suit as a gesture of comity between the United States and other sovereigns").

If left unchecked, the state fraudulent conveyance law stratagem devised by Crystallex could be employed by any potential judgment creditor of a foreign sovereign, effectively creating a secondary legal regime (or fifty different secondary legal regimes) governing the movement of foreign sovereign property. This would surely disrupt the *jure imperii* of sovereigns, which Congress carefully protected via the FSIA.

But the effects of Crystallex's strategy on foreign sovereigns ripples further outward. For example, as evidenced by this case, Crystallex's strategy would also threaten third parties with massive liability for transferring such property. Indeed, banks or other entities currently holding foreign-owned assets would hesitate before transferring those assets for fear of incurring liability under state fraudulent transfer statutes based on allegations regarding the sovereign's intentions. By thus chilling the transfer of foreign-owned assets, the District Court's opinion could interfere with foreign relations

34

and do real harm to the sovereignty interests that the FSIA is designed to protect. *See S & S Mach. Co.*, 706 F.2d at 418 (noting that "the FSIA would become meaningless" if the ban on prejudgment attachments were not interpreted to preclude attachments as well as "any other means to effect the same result"); *accord* App. 73 ("[I]nternational comity is implicated by this case and specifically by the issues this Court has already decided[;] . . . there is at least some risk of unintended international consequences, which sets this case apart from the vast majority of others.").

Ultimately, FSIA attachment immunity is part of a comprehensive federal statute offering powerful protection for foreign sovereigns and their property. One aspect of this protection is that foreign sovereigns are free to move their assets out of the United States unless and until an arbitration opponent or other creditor has reduced a debt to judgment, has followed the procedures for attachment and execution prescribed by Congress, and has obtained a ruling that the property targeted is not immune from postjudgment execution. In this case, until there is a court order restraining Venezuela's property after the issuance of a valid judgment, it is under no obligation to alter its economic decisions to ensure that property to satisfy a *potential*

judgment against it remains available to its *potential* creditors in the United States.  Yet Crystallex's entire DUFTA claim is premised on the idea that Venezuela had just such an obligation under Delaware law and that DUFTA can be used to encumber allegedly sovereign property in order to fulfill that obligation.  As there was no arbitral award, much less a court order restraining Venezuela's property, at the time of the allegedly fraudulent transfer in 2015, the transfer or similar subsequent transfers could not be restrained, whether by attachment, injunction, or the threat of liability.  To the extent that DUFTA provides otherwise, it is preempted.

Holding DUFTA preempted here would not, however, leave Crystallex without a remedy for Venezuela's expropriation of its gold mining assets.  Although Congress' framework limits the remedies that Crystallex may seek, Crystallex still may pursue relief by following the appropriate steps set forth in the FSIA: obtaining an arbitral award, reducing that arbitral award to a judgment in a U.S. court, identifying a § 1610(a)-(b) exception to attachment immunity, and seeking a writ of execution to enforce that judgment.  Indeed, Crystallex is well on its way.  It has obtained an arbitral award, which was recently confirmed by the U.S. District Court for the District of Columbia, and on April 25,

2017, moved for an order from that court pursuant to 28 U.S.C.

§ 1610(c) determining that a reasonable time has elapsed since the

confirmation and permitting Crystallex to register the D.C. Judgment

in the District of Delaware.

## II.    CRYSTALLEX FAILS TO STATE A CLAIM UNDER DUFTA.

In addition to its erroneous conclusion regarding the FSIA, the

District Court erred in holding that Crystallex adequately alleged the

necessary elements of a DUFTA claim against PDVH.  Instead, the

District Court employed a sweeping and novel view of the scope of

DUFTA in order to keep PDVH in the case despite the fact that

Crystallex nowhere alleged a creditor-debtor relationship with PDVH.

This Court should reverse the District Court's interpretation as

inconsistent with Delaware law and bedrock principles of corporate law,

and grant PDVH's motion to dismiss Crystallex's fraudulent transfer

claim for failure to allege the necessary elements under DUFTA.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)

(observing that a claimant must allege each "required element" of its

claim to survive a motion to dismiss).

Under DUFTA, "[a] transfer made . . . *by a debtor* is fraudulent as

to a creditor . . . if the *debtor* made the transfer . . . with actual intent to

hinder, delay or defraud any creditor of the debtor[.]"  6 Del. C.
§ 1304(a)(1) (emphasis added).  If a plaintiff-creditor can show that such
a transfer occurred, DUFTA permits the plaintiff to seek (1) equitable
and damages relief against the debtor and (2) "to the extent [the]
transfer is voidable," damages relief against "the first transferee of the
asset or the person for whose benefit the transfer was made" and any
subsequent transferees (other than good-faith transferees).  *Id.*
§§ 1307(a), 1308(b).  Therefore, under the plain language of DUFTA,
liability for fraudulent transfers may only be imposed on debtors and
transferees, not "non-debtor transferors."

Here, Crystallex claims to be a creditor of Venezuela and, by way
of its alter ego allegation, PDVSA—not PDVH.  Yet despite the fact that
PDVH was neither a debtor nor a transferee in the allegedly fraudulent
transfer, the District Court rejected PDVH's argument that DUFTA's
express terms preclude a claim against PDVH.  Rather, it held that
PDVH could be liable as a "non-debtor transferor" due to its payment of
a dividend to its parent, PDVSA, allegedly at the behest of the debtor.

This Court should reject that reading of DUFTA, which
contravenes the plain language of the statute, *see* App. 14 ("Plaintiff's
DUFTA claim strains the statute's structure."), does not comport with

the Delaware Supreme Court's most likely statutory interpretation,[17] and would lead to absurd results, *Cen v. Att'y Gen.*, 825 F.3d 177, 194 (3d Cir. 2016) ("[W]e avoid interpreting statues in a way that would render them absurd.").

As the District Court pointed out, at the time it made its September 30, 2016 ruling, it faced an "absence of specific guidance from the Supreme Court of Delaware" as to the meaning of DUFTA's "by a debtor" language.  App. 7.  But PDVH cited persuasive Delaware Chancery and Superior Court authority[18] in support of the proposition that DUFTA requires a transfer made "by a debtor" (not a "non-debtor transferor"), either directly or through an alter ego.  For example, in *In re Wickes Trust*, No. Civ. A. 2515-VCS, 2008 WL 4698477, at *7-8 (Del. Ch. Oct. 16, 2008), the Chancery Court observed that because DUFTA only covers transfers made by a *debtor* as to its *creditor*, "in order to have a fraudulent transfer claim, one must first have a valid claim

---

[17] *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016) ("When interpreting state law, we follow a state's highest court; if that state's highest court has not provided guidance, we are charged with predicting how that court would resolve the issue." (quoting *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011)).

[18] While the Delaware Chancery Court is not the state's highest court, federal courts give the rulings of intermediate state courts "due deference" when applying state law.  *In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014).

against the person . . . alleged to have fraudulently made the transfer."
*See also Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, C.A. 7994-
VCN, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016) (denying standing
for a fraudulent conveyance claim against a non-debtor subsidiary
company where there had been no allegation by the creditor to support
piercing the debtor parent company's corporate veil), *aff'd sub nom.*
*Klauder v. ECHO/RT Holdings, LLC*, No. 133, 2016, 2016 WL 7189917
(Del. Dec. 12, 2016); *Reserves Mgmt. Corp. v. 30 Lots LLC*, C.A. No.
08C-08-010 JTV, 2009 WL 4652991, at *5 (Del. Super. Ct. Nov. 30,
2009) (granting summary judgment to defendant on a DUFTA claim on
the grounds that the allegedly fraudulent transfer—a foreclosure—was
not made by a debtor and did not involve debtor property); *In re*
*Plassein Int'l Corp.*, 366 B.R. 318, 326 (Bankr. D. Del. 2007), *aff'd.* 388
B.R. 46 (D. Del. 2008), *aff'd* 590 F.3d 252 (3d Cir. 2009) (dismissing
fraudulent transfer claim on the grounds that the alleged transfer was
made by a non-debtor).

The District Court declined to follow this authority, relying
instead on the Merriam-Webster Dictionary definition of the word "by"
to conclude that DUFTA liability premised on a transfer "*by* a debtor"

40

extends to "non-debtor transferors" acting on behalf of the debtor.[19]

App. 11-14.  The novelty of this ruling should not be understated.  In

essence, the District Court determined that the phrase "[a] transfer

made . . . by a debtor," 6 Del. C. § 1304(a)(1), applies not only to

transfers by a debtor itself, but also to transfers by a subsidiary of a

debtor even where a plaintiff has not alleged that the corporate veil

between the parent and its subsidiary should be pierced or that the two

are alter egos.  Fundamental principles of corporate law make plain

that the District Court overstepped.  Indeed, PDVH's status as

PDVSA's subsidiary is not sufficient to confer the alter ego status

necessary to create the debtor-creditor relationship between PDVH and

Crystallex that is required to render PDVH's transfer actionable under

DUFTA.  *E.g.*, *Dole Food*, 538 U.S. at 474-75 ("A basic tenet of

---

[19] To the extent the District Court tied its interpretation to the language in DUFTA that provides liability against "indirect" fraudulent transfers, 6 Del. C. 1301(12), it was also mistaken.  App. 11.  That provision contains no exception from DUFTA's threshold requirement that an actionable transfer be undertaken by a debtor, not a non-debtor transferor.

Moreover, to the extent Appellees may suggest, as they did in the proceedings below, that DUFTA contemplates liability for transferees, they still cannot shoehorn PDVH into their DUFTA claim.  PDVH was only a transferee for the transfer between CITGO Holding and itself, and the District Court already dismissed Crystallex's DUFTA claim relating to that transfer.  Moreover, while a transferee may be liable under DUFTA, a creditor can *only* recover from a transferee "to the extent a transfer is voidable."  In order to be "voidable," a transfer must be fraudulent, which requires a transfer by a *debtor*.  *Id.* § 1304(a)(1).

American corporate law is that the corporation and its shareholders are distinct entities. . . . A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary . . . The fact that the shareholder is a foreign state does not change the analysis."); *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999) ("Persuading a Delaware court to disregard the corporate entity is a difficult task." (internal quotation marks omitted)).

Simply put, Crystallex has nowhere alleged that PDVH is an alter ego of the debtor in this case (Venezuela), meaning that Crystallex has failed to allege a basis for holding PDVH liable under DUFTA as a "debtor" (or as a "transferee"). Accordingly, this Court should follow Delaware jurisprudence, principles of corporate law, and the plain language of DUFTA to reject the District Court's expansion of DUFTA to include "non-debtor transferors." Doing so requires dismissal of Crystallex's DUFTA claim against PDVH for failure to allege a necessary element of the claim. *See Wickes*, 2008 WL 4698477, at *8 (dismissing DUFTA claim on the ground that the plaintiff was not a creditor of the defendant).

Furthermore, given the foreseeable, detrimental consequences

that the District Court's expansive interpretation of DUFTA could have, this Court should reject the extension of DUFTA liability to non-debtor transferors because such an interpretation would be "absurd." *See Cen*, 825 F.3d at 194; *see also Republic of Iraq v. Beaty*, 556 U.S. 848, 861 (2009) (discounting a statutory interpretation because it would have been absurd "not only textually but in the *result it produces*" (emphasis added)).  If DUFTA is read to reach the activities of "non-debtor transferors," the scope of liability under the statute would become unprecedented, potentially calling into question numerous other transactions where banks or other non-debtor entities transfer funds belonging to others. For example, extending the reach of DUFTA to non-debtor transferors that transfer a debtor's property *to* the debtor could deter companies fearful of potential liability from dispensing declared dividends—or even permitting the withdrawal of funds from a bank account—any time the recipient is subject to (even frivolous) litigation.

The District Court's interpretation also threatens to expose to litigation previously unassailable transfers made by entities holding debtor property to third parties.  Such litigation could survive the motion to dismiss stage simply because a frustrated creditor *claims* that a transferor acted at the behest of a debtor.  Such an interpretation

could thus chill myriad financial transactions that, until now, have been conducted in the normal course. Lastly, this interpretation could erode the bedrock principle of separate incorporation and limited liability, rendering corporate affiliates liable for the debts of their parents or subsidiaries in contravention of well-established corporate law. These results would be at cross-purposes with the very aims of DUFTA, along with the robust tradition of corporate law in the State of Delaware, and thus serve as further reasons to reject the District Court's interpretation.

## CONCLUSION

For the foregoing reasons, PDVH respectfully requests that the Court reverse the District Court's denial of PDVH's motion to dismiss the DUFTA claim against it, and, accordingly, dismiss this suit against PDVH in its entirety.

Dated: May 2, 2017

Respectfully submitted,
/s/ Nathan P. Eimer
Nathan P. Eimer
neimer@eimerstahl.com
Lisa S. Meyer
lmeyer@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60604

312-660-7600

and

Kenneth J. Nachbar
knachbar@mnat.com
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
302-351-9294

***Attorneys for Appellant PDV
Holding, Inc.***

## COMBINED CERTIFICATIONS

### CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May 2017, I caused an electronic PDF copy of this Appellant PDV Holding's Opening Brief to be filed and served with the Clerk of the Court of the United States Court of Appeals for the Third Circuit via CM/ECF, which will send notification of such filing to counsel for Appellees who are registered CM/ECF users.

### CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this brief is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

### CERTIFICATION OF COMPLIANCE WITH RULE 32(a)

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,273 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because the brief has been prepared in a proportional typeface using

Microsoft Word 2013 in 14-point Century Schoolbook font.

## CERTIFICATION OF VIRUS CHECK

I hereby certify that the PDF version of this brief that is being

filed electronically with the Clerk of Court through the CM/ECF system

has been scanned for viruses using Sophos version 10.7, and no virus

was detected.

## CERTIFICATION OF TEXT OF BRIEF

I hereby certify that the text of the electronic brief filed on May 2,

2017 and the text of the hard copies of the brief are identical.


Respectfully submitted,

/s/ Nathan P. Eimer
Nathan P. Eimer
neimer@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60604
312-660-7600

***Attorney for Appellant
PDV Holding, Inc.***