Case Nos. 16-4012 & 17-1439

# UNITED STATES COURT OF APPEALS
## FOR THE
## THIRD CIRCUIT

### CRYSTALLEX INTERNATIONAL CORP.,

*Plaintiff-Appellee,*

v.

### PETRÓLEOS DE VENEZUELA, S.A.;
### PDV HOLDING, INC.; and CITGO HOLDING,
### INC., f/k/a PDV AMERICA, INC.,

*Defendant-Appellant (PDV Holding, Inc.).*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF DELAWARE
Civil Action No. 1:15-cv-01082-LPS
The Honorable Leonard P. Stark, United States District Judge.

## PLAINTIFF-APPELLEE CRYSTALLEX INTERNATIONAL CORP.'S
## OPPOSITION BRIEF

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Raymond J. DiCamillo
Jeffrey L. Moyer
Travis S. Hunter
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

*Attorneys for Plaintiff-Appellee Crystallex International Corp.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1.1, Crystallex International Corp. hereby discloses that it has no parent corporations, and no publicly held company owns 10% or more of its outstanding membership units.  No publicly owned company not a party to this appeal has a financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................1

STATEMENT OF THE CASE.......................................................5

    I.    FACTUAL BACKGROUND....................................................5

    II.    PROCEDURAL BACKGROUND .........................................8

RELATED CASES AND PROCEEDINGS.........................................12

    I.    THE CONFIRMATION OF THE ARBITRAL AWARD....................12

    II.    *CRYSTALLEX II*: SUBSEQUENT FRAUDULENT TRANSFER LITIGATION......................................................................13

JURISDICTION AND STANDARD OF REVIEW ..............................14

STATEMENT OF THE ISSUES....................................................15

SUMMARY OF THE ARGUMENT ..................................................15

ARGUMENT ...........................................................................17

    I.    THE DISTRICT COURT PROPERLY HELD THAT THE FSIA DOES NOT BAR CRYSTALLEX'S DUFTA CLAIM......................17

        A.    The FSIA Does Not Limit PDVH's Liability............................18

        B.    The FSIA Does Not Preempt the Application of DUFTA in This Case.................................................................18

            1.    Crystallex's Claim for DUFTA Liability Does Not Constitute an "Attachment" Within the Meaning of the FSIA........................................................20

            2.    The FSIA Expressly Provides That, Once Jurisdiction Is Established, Sovereigns Are Subject to Liability as if They Were Private Litigants ...............25

            3.    The FSIA Leaves the Determination of the Scope (and Existence) of Liability to Existing Law  ...............26

## TABLE OF CONTENTS
(continued)

Page

4.  DUFTA Does Not Conflict with the Purposes
    Underlying the FSIA's Prejudgment Attachment
    Immunity Provisions.......................................................27

II.  THE DISTRICT COURT PROPERLY HELD THAT
     CRYSTALLEX STATED A DUFTA CLAIM AGAINST PDVH ......31

     A.  DUFTA Imposes Liability on Non-Debtor Transferors
         Such as PDVH ..........................................................................31

         1.  Under DUFTA, Transfers "By a Debtor" Include
             Transfers Made at the Debtor's Behest ..........................34

         2.  The District Court's Interpretation of DUFTA
             Does Not Undermine Principles of Corporate Law
             or Expose Good-Faith Transferors to Liability ..............41

     B.  PDVH May Be Liable Under DUFTA as a Transferee............45

CONCLUSION ......................................................................................51

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989)................................................................27

*BFP v. Resolution Trust Corp.*,
  511 U.S. 531 (1994)................................................................19

*Bldg. & Const. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors of Mass./R.I., Inc.*,
  507 U.S. 218 (1993)................................................................19

*Boston Trading Grp., Inc. v. Burnazos*,
  835 F.2d 1504 (1st Cir. 1987)................................................19

*Brenntag Int'l Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999) ................................23, 28, 30

*Brooks-McCollum v. Delaware*,
  213 F. App'x 92 (3d Cir. 2007) ..........................................45

*In re Canyon Sys. Corp.*,
  343 B.R. 615 (Bankr. S.D. Ohio 2006) ..............................47

*In re Carousel Candy Co., Inc.*,
  38 B.R. 927 (Bankr. E.D.N.Y. 1984) ............................39, 40

*Cephas v. State*,
  911 A.2d 799 (Del. 2006) ....................................................35

*CMS Inv. Holdings, LLC v. Castle*,
  C.A. No. 9468-VCP,
  2015 WL 3894021 (Del. Ch. June 23, 2015).......................49

*Conn. Bank of Commerce v. Republic of Congo*,
  309 F.3d 240 (5th Cir. 2002) ..............................................29

*Cont'l Cas. Co. v. Symons*,
  817 F.3d 979 (7th Cir.),
  *cert. denied sub nom. Symons Int'l Grp., Inc. v. Cont'l Cas. Co.*,
  137 S. Ct. 493 (2016)...........................................................49

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003)...................................................................18, 29

*Eid v. Thompson*,
740 F.3d 118 (3d Cir. 2014),
*cert. denied*, 135 S. Ct. 175 (2014).....................................................35

*F.T.C. v. Wyndham Worldwide Corp.*,
799 F.3d 236 (3d Cir. 2015) ...............................................................14

*Farina v. Nokia Inc.*,
625 F.3d 97 (3d Cir. 2010) ..........................................................26, 28

*Fasano v. Fed. Reserve Bank of N.Y.*,
457 F.3d 274 (3d Cir. 2006) ...............................................................18

*Fields v. Three Cities Research, Inc.*,
No. Civ. 02-975-AA,
2004 WL 1173158 (D. Or. May 25, 2004).........................................37

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983)............................................................................28

*Geveke & Co. Int'l, Inc. v. Kompania Di Awa I Elektrisidat Di Korsou N.V.*,
482 F. Supp. 660 (S.D.N.Y. 1979) .....................................................31

*Gutierrez v. Givens*,
1 F. Supp. 2d 1077 (S.D. Cal. 1998).......................................38, 41, 43

*In re Harlin*,
321 B.R. 836 (E.D. Mich. 2005).........................................................48

*Ki-Poong Lee v. So*,
C.A. No. N14C-08-173 PRW,
2016 WL 6806247 (Del. Super. Ct. Nov. 17, 2016).........................39

*Klein v. King & King & Jones*,
571 F. App'x 702 (10th Cir. 2014) .....................................................33

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*,
   C.A. No. 6546-VCL,
   2014 WL 5192179 (Del. Ch. Oct. 10, 2014) ................................................32, 37

*Leifer v. Murphy*,
   149 Misc. 455 (N.Y. Sup. Ct. 1933)...................................................................33

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996).........................................................................................19

*In re Mirant Corp.*,
   675 F.3d 530 (5th Cir. 2012) ...........................................................................19

*Mitsubishi Power Sys. Ams., Inc. v. Babcock & Brown Infrastructure
   Grp. US, LLC*,
   C.A. No. 4499-VCL,
   2009 WL 1199588 (Del. Ch. Apr. 24, 2009)......................................................46

*In re Mobilactive Media, LLC*,
   C.A. No. 5725-VCP,
   2013 WL 297950 (Del. Ch. Jan. 25, 2013)......................................33, 34, 37, 41

*Nat'l Loan Inv'rs, L.P. v. Givens*,
   952 P.2d 1067 (Utah 1998)..............................................................................33

*Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*,
   657 F.3d 1159 (11th Cir. 2011) ........................................................................22

*In re OODC, LLC*,
   321 B.R. 128 (Bankr. D. Del. 2005)..................................................................47

*Orr v. Kinderhill Corp.*,
   991 F.2d 31 (2d Cir. 1993) ...............................................................................47

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev.
   Comm'n*,
   461 U.S. 190 (1983)..........................................................................................27

*In re Pajaro Dunes Rental Agency, Inc.*,
   174 B.R. 557 (Bankr. N.D. Cal. 1994) ..............................................................48

# TABLE OF AUTHORITIES *(continued)*

Page(s)

*Peterson v. Islamic Republic of Iran*,
  627 F.3d 1117 (9th Cir. 2010) ........................................................29

*In re PHP Healthcare Corp.*,
  128 F. App'x 839 (3d Cir. 2005) ....................................................39

*Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*,
  771 F.3d 980 (7th Cir. 2014),
  *cert. denied*, 135 S. Ct. 2891 (2015) ..............................................22

*In re Plassein Int'l Corp.*,
  366 B.R. 318 (Bankr. D. Del. 2007) ...............................................36

*Raji v. Bank Sepah-Iran*,
  495 N.Y.S.2d 576 (N.Y. Sup. Ct. 1985) .........................................23

*Republic of Argentina v. NML Capital, Ltd.*,
  134 S. Ct. 2250 (2014) ....................................................................27

*Republic of Austria v. Altmann*,
  541 U.S. 677 (2004) ..................................................................28, 30

*Reserves Mgmt. Corp. v. 30 Lots LLC*,
  C.A. No. 08C-08-010 JTV,
  2009 WL 4652991 (Del. Super. Ct. Nov. 30, 2009).......................36

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ........................................................31

*S & S Mach. Co. v. Masinexportimport*,
  706 F.2d 411 (2d Cir. 1983) ...........................................................22

*Sedwick v. Gwinn*,
  873 P.2d 528 (Wash. Ct. App. 1994)..............................................48

*Seiden v. Kaneko*,
  No. CV 9861-VCN,
  2015 WL 7289338 (Del. Ch. Nov. 3, 2015) ..............................24, 25

*Spring Real Estate, LLC v. Echo/RT Holdings, LLC*,
  C.A. No. 7994-VCN,
  2016 WL 769586 (Del. Ch. Feb. 18, 2016) .....................................36

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Stephens v. Nat'l Distillers & Chem. Corp.*,
    69 F.3d 1226 (2d Cir. 1995) ............................................................23

*United States v. Cooper*,
    396. F.3d 308 (3d Cir. 2005) ...........................................................40

*United States v. Patras*,
    544 F. App'x 137 (3d Cir. 2013) ........................................................2

*United States v. Tabor Court Realty Corp.*,
    803 F.2d 1288 (3d Cir. 1986) ..........................................................47

*USX Corp. v. Adriatic Ins. Co.*,
    345 F.3d 190 (3d Cir. 2003) ............................................................29

*Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*,
    919 F.2d 206 (3d Cir. 1990) ............................................................46

*In re Wickes Tr.*,
    C.A. No. 2515-VCS,
    2008 WL 4698477 (Del. Ch. Oct. 16, 2008) ....................................36

*Williams v. Shipping Corp. of India*,
    653 F.2d 875 (4th Cir. 1981) ...........................................................31

*Wultz v. Islamic Republic of Iran*,
    755 F. Supp. 2d 1 (D.D.C. 2010)......................................................18

*Zschernig v. Miller*,
    389 U.S. 429 (1968)........................................................................27

### Statutes

6 Del. C. § 1301 ....................................................................*passim*

6 Del. C. § 1304 ....................................................................*passim*

6 Del. C. § 1307 ........................................................37, 40, 44, 45

6 Del. C. § 1308 ......................................................................40, 45

11 U.S.C. § 548........................................................................39

## TABLE OF AUTHORITIES *(continued)*

Page(s)

11 U.S.C. § 550 ......................................................................................40

28 U.S.C. § 1292(b) ..........................................................................11, 14

28 U.S.C. § 1330(a) ...............................................................................14

28 U.S.C. § 1367 ....................................................................................14

28 U.S.C. § 1603 ....................................................................................18

28 U.S.C. § 1606 ..............................................................................*passim*

28 U.S.C. § 1609 ..............................................................................*passim*

28 U.S.C. § 1610 ..........................................................................2, 12, 28

28 U.S.C. § 1611 ................................................................................2, 28

Cal. Civ. Code § 3439.04(a) ...................................................................38

### Other Authorities

13 Eliz 1, c 5 ........................................................................................33

H.R. Rep. No. 94-1487 ...........................................................................30

Model Uniform Fraudulent Transfer Act § 1 cmt. 10 ...........................49

The Wall Street Journal Market Data Center,
    http://www.wsj.com/mdc/public/page/2_3020-moneyrate.html (last
    visited May 31, 2017) ..........................................................................7

# INTRODUCTION

Plaintiff-Appellee Crystallex International Corp. ("Crystallex") holds a $1.2 billion United States judgment against the Bolivarian Republic of Venezuela ("Venezuela") after Venezuela seized the gold mine in which Crystallex had invested hundreds of millions to develop.  In February 2011, Crystallex commenced an arbitration in Washington, D.C. pursuant to the bilateral investment treaty between Canada and Venezuela.  The Washington, D.C.-seated tribunal issued its award on April 4, 2016, and the District Court for the District of Columbia issued an order confirming the award on March 25, 2017.

While the Washington, D.C.-seated arbitration was pending, Venezuela— through its alter ego Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA's wholly owned subsidiary, Defendant-Appellant PDV Holding Inc. ("PDVH")—caused PDVH's wholly owned indirect subsidiary, CITGO Holding Inc. ("CITGO Holding"), to borrow $2.8 billion at 12% interest and then transferred those funds out of the United States through a dividend from CITGO Holding to PDVH to PDVSA.  The transaction had no legitimate business purpose and wears multiple badges of fraud—statutory indicia of actual fraudulent intent set forth in the Delaware Uniform Fraudulent Transfer Act ("DUFTA"): the transfer of the multibillion-dollar dividend was made during the pendency of the arbitration and for no consideration; the dividend was paid to a related party and closely followed the

borrowing of the funds used to make the dividend; the funds were transferred out of the United States; and the transaction left CITGO Holding insolvent on a GAAP basis. *See* 6 Del. C. § 1304(b). "While a single factor [or 'badge of fraud'] alone may be sufficient to establish fraudulent intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *United States v. Patras*, 544 F. App'x 137, 144 (3d Cir. 2013).

Given the number of badges of fraud implicated, PDVH cannot and does not seriously dispute that Crystallex has adequately alleged that the $2 billion dividend was an intentional fraudulent transfer. Instead, PDVH—a Delaware corporation—contends that, even though it is not a foreign sovereign, the fact that the funds that it transferred belonged to PDVSA means that the transaction is exempt from DUFTA.

The Foreign Sovereign Immunities Act ("FSIA") expressly states that "[a]s to any claim for relief with respect to which a foreign state is not entitled to [jurisdictional] immunity . . . the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 1606. PDVH does not contend that any jurisdictional immunity applies to PDVH. Nor can it. PDVH is not a sovereign.

Instead, PDVH argues that provisions of the FSIA that restrict the availability of "attachment prior to the entry of judgment," 28 U.S.C. §§ 1609, 1610, 1611, somehow control. The problem with PDVH's argument is that Crystallex does not

seek a prejudgment attachment against PDVSA's property.  PDVH tries to stretch the FSIA's prohibition against prejudgment attachments into a substantive rule that no prejudgment transfer of an asset belonging to a sovereign ever can be challenged because the mere existence of potential liability effectively would "encumber" sovereign assets.  However, nothing in the language of the FSIA allows PDVH, a Delaware corporation that owns a multibillion-dollar commercial enterprise operating in the United States, to ignore DUFTA.

In an attempt to fabricate a purported sovereign right to commit fraudulent transfers, PDVH cites cases where a party sought prejudgment relief by way of a court-ordered attachment, or an injunction or deposit of prejudgment security that operated like an attachment.  But PDVH cites no case holding that conduct determined to violate DUFTA (or any other statute) was nevertheless immune from liability under Section 1609.  No court has adopted PDVH's argument that subjecting a Delaware company owned by a sovereign to liability would "encumber" the sovereign's assets by encouraging the sovereign to comply with Delaware law.

PDVH's second argument is that its intentional fraudulent transfer of over $2 billion to PDVSA does not violate DUFTA because PDVH is a "non-debtor transferor."  PDVH was at the center of a single, integrated transaction that first required PDVH's wholly owned subsidiary CITGO Holding to borrow $2.8 billion at 12% interest and then to dividend that money to PDVH for no consideration—

leaving CITGO Holding insolvent on a GAAP basis.  As part of that same integrated transaction, PDVH then moved the borrowed money out of the country by paying a dividend to PDVSA—again for no consideration.  PDVH does not dispute that Crystallex has adequately pleaded an intentional fraudulent transfer claim.  Instead, PDVH asks this Court to look at PDVH's role in the transaction in isolation and asserts that PDVH cannot be held liable for its deliberate role in receiving and passing on more than $2 billion as part of a scheme to hinder and delay creditors.

According to PDVH, DUFTA is limited to claims against "debtors" that transfer assets and "transferees."  PDVH, on the other hand, is a "non-debtor transferor."  Even though PDVH knowingly transferred PDVSA's assets out of the United States with the intent to hinder and delay creditors, PDVH claims it cannot be held liable.  DUFTA, however, is not to be so narrowly construed.

DUFTA grants courts broad latitude and leaves considerable leeway for the exercise of equitable discretion to craft remedies to put a creditor in the position it would have been in had the fraudulent transfer not occurred.  For this reason, courts look at the substance rather than the form of a transaction in determining whether a transaction (or series of transactions) constitutes a fraudulent transfer.  PDVH was an integral participant in a multibillion-dollar transfer that was designed to hinder and delay creditors.  As part of that transaction, PDVH received billions of dollars from its wholly owned subsidiary and passed those funds on to its parent—without

any consideration and as part of a scheme that wears multiple badges of fraud. Clever structuring cannot save an intentionally fraudulent transfer from liability.

Accordingly, and for the reasons stated below, Crystallex respectfully requests that this Court affirm the District Court's decision denying PDVH's motion to dismiss.

## STATEMENT OF THE CASE

## I.    FACTUAL BACKGROUND

Crystallex, a Canadian gold producer, owned exclusive rights to Las Cristinas, a gold reserve in Venezuela that is arguably the largest untapped gold deposit in the world.  A-029 (¶ 2), A-034 (¶ 20).[1]  Crystallex spent hundreds of millions of dollars to explore and develop Las Cristinas.  A-030 (¶ 3), A-036 (¶ 27).  Venezuela's unlawful actions culminated in the expropriation of Crystallex's rights in early 2011. A-029-30 (¶¶ 2-3), A-037 (¶ 34).  Venezuela subsequently transferred those rights to PDVSA, its wholly owned, state-run oil company, for no consideration, and PDVSA in turn sold 40% of those rights for $6.87 billion.[2]  A-030 (¶ 3), A-037-38 (¶¶ 36-37).  Venezuela's expropriation of Las Cristinas violated its obligations under its bilateral investment treaty with Canada and, pursuant to that treaty, in February

---

[1]    References to "A-XXX" refer to pages in PDVH's Appendix.

[2]    As Crystallex has alleged at length in its complaint, PDVSA is Venezuela's alter ego.  *See* A-046-61 (¶¶ 77-158).  The adequacy of those allegations has not been challenged by PDVH (or PDVSA).

2011, Crystallex commenced an arbitration against Venezuela in Washington, D.C. A-030 (¶ 4), A-039 (¶ 45).

During the pendency of the arbitration, Venezuela began looking for a way to avoid enforcement in the United States. First, Venezuela tried to sell CITGO Petroleum ("CITGO"), its most valuable asset in the United States. A-031 (¶ 6). CITGO is owned by Venezuela's alter ego, PDVSA, through its wholly owned subsidiary, PDVH, and PDVH's wholly owned subsidiary, CITGO Holding. *Id*. Venezuela ultimately decided not to sell CITGO, but rather to monetize and extract as much value as possible from CITGO another way. A-031 (¶ 7).

Venezuela and PDVSA made their intentions perfectly clear: by July 2014, CITGO was advising bondholders that "PDVSA . . . [was] currently seeking to monetize its ownership interest in [CITGO Holding]." A-044 (¶ 69). CITGO Holding advised its potential lenders that:

- "[N]o assurance can be given that any of the Transactions would not be challenged as a fraudulent transfer";

- "[No] assurance [could] be given that . . . Venezuela, as PDVSA's shareholder, will not adopt policies or exercise its control of PDVSA in a manner that might adversely affect [CITGO Holding bondholders'] interests"; and

- "PDVSA could at any time in the future conduct other processes or undertake one or more transactions to monetize its interests in us, and any such process could be undertaken or any such transaction could occur at a time when it would be beneficial to PDVSA but could have a negative impact on [CITGO Holding]." *Id*. (¶¶ 67-69).

In order to accomplish Venezuela's goal of avoiding creditors like Crystallex, and as part of an integrated transaction, PDVSA directed its wholly owned subsidiary, PDVH, to direct its wholly owned subsidiary, CITGO Holding, to issue $2.8 billion in debt in the form of a bond offering and a syndicated loan. A-031 (¶ 8). CITGO Holding used $748 million of the funds from its bond issuance to "purchase" three subsidiaries of CITGO, all of which were guarantors of the bonds. A-042 (¶ 57). CITGO then paid the money it had just received from CITGO Holding back to CITGO Holding in the form of a "dividend." *Id*. (¶ 58). CITGO Holding then transferred the $748 million it had just "round-tripped," together with the rest of the debt proceeds, to PDVH. *Id.* (¶ 59).

The transfer of more than $2 billion from CITGO Holding to PDVH was made without any consideration. A-031 (¶ 8), A-041 (¶ 54). CITGO Holding's debt offering had no legitimate business purpose; its express purpose was to issue a dividend. *Id.* Although it received no benefit from the transaction, CITGO Holding was forced to agree to borrow the $2.8 billion at a very high 12% interest rate (at a time when the Prime Rate was 3.25%). A-031 (¶ 8), A-041-42 (¶ 55).[3] The bonds were rated as non-investment grade, or "junk," bonds by all three major ratings

---

3    The Prime Rate is published by the Wall Street Journal, which provides current and historical rate data. *See* The Wall Street Journal Market Data Center, http://www.wsj.com/mdc/public/page/2_3020-moneyrate.html (last visited May 31, 2017).

agencies from the moment they were issued, and the debt offering and subsequent dividend to PDVH left CITGO Holding insolvent on a GAAP basis.  A-031 (¶ 8).

Upon receiving these funds, PDVH paid its own "dividend," equal to what it had received from CITGO Holding, to its immediate parent, PDVSA.  *Id*.; A-043 (¶ 61).  As Crystallex alleged, the net result of these activities was that Venezuela (through PDVSA and its subsidiaries) repatriated more than $2 billion in proceeds to Venezuela where it was safe from execution by creditors like Crystallex.[4]  *Id*.  The transfer of more than $2 billion—to an insider, during the pendency of an arbitration, for no consideration—removed assets from the United States and left CITGO Holding insolvent on a GAAP basis shortly after CITGO Holding took on substantial debt.  A-031 (¶ 8), A-044 (¶ 70).  In short, the transfer to PDVSA wears multiple badges of fraud.

## II.    PROCEDURAL BACKGROUND

Crystallex filed its complaint in the action below ("*Crystallex I*") on November 23, 2015, alleging violations of DUFTA and civil conspiracy against PDVSA, PDVH, and CITGO Holding.  A-029-66.  On February 3, 2016, PDVH and

---

[4]    Crystallex alleged in its November 2015 complaint that PDVH sent the full $2.8 billion to PDVSA.  A-031 (¶ 8), A-043 (¶ 61).  In September 2016, PDVSA represented in a bond offering circular that the dividend it immediately received from PDVH was in the amount of $2.2 billion.  The remaining funds were held to secure payments on the debt.

CITGO Holding moved to dismiss the complaint.5 D.I. 8.  They argued, among other

things, that (1) the FSIA's restriction on prejudgment attachment bars Crystallex's

fraudulent transfer claim, and (2) Crystallex failed to state a fraudulent transfer claim

because PDVH and CITGO Holding are not "debtors" under DUFTA and the more

than $2 billion they transferred was not "property of the debtor."  D.I. 9.  Notably,

neither PDVH nor CITGO Holding argued that Crystallex had failed adequately to

allege their (or PDVSA's) actual intent to hinder and delay creditors.

On September 30, 2016, the District Court issued a Memorandum Opinion

denying, in relevant part, PDVH's motion to dismiss Crystallex's DUFTA claim.6

A-001-22.  In its decision, the District Court rejected PDVH's attempt to avoid

liability for its role in transferring over $2 billion out of the United States with the

---

5    PDVSA separately moved to dismiss on July 25, 2016.  D.I. 28.  In deciding
the motion the District Court resolved a dispute between the parties as to the
appropriate pleading standard, and then granted PDVSA's motion on May 1, 2017,
dismissing Crystallex's claims against PDVSA on the grounds that Crystallex had
not alleged adequately specific conduct of PDVSA within the United States in
connection with the fraudulent transfer.  D.I. 77.  On May 25, 2017, Crystallex
moved to amend its complaint in order to re-allege its claims against PDVSA to
reflect the standard adopted by the District Court.  D.I. 84.  PDVSA's opposition to
Crystallex's motion is due on June 12, 2017.  D.I. 86.

6    The District Court granted CITGO Holding's motion and granted PDVH's
motion only as to Crystallex's civil conspiracy claim.  In granting the motion as to
CITGO Holding, the District Court decided not to collapse the entire series of
transactions into a single fraudulent conveyance, but rather to analyze each
transaction separately.  In light of the limited nature of this interlocutory appeal,
Crystallex reserves its challenge to the District Court's dismissal of CITGO Holding
for a later date.

intent to hinder and delay creditors. The District Court held that, in light of DUFTA's broad remedial purposes, "PDVH's continued presence in this action is appropriate." A-013. As the District Court explained, "all that DUFTA requires is a transfer of the debtor's property with sufficient involvement of the debtor." *Id.* Because the transfer of the dividend from PDVH to PDVSA involved "property of a debtor" and was "orchestrated by and carried-out under orders from Venezuela and/or [PDVSA]," DUFTA's requirements were met. A-012.

In response to PDVH's attempt to limit the application of DUFTA to debtors, as opposed to "non-debtor" transferors, the District Court noted that the "ordinary meaning of the words" in DUFTA "includes within its ambit 'indirect . . . mode(s) . . . of disposing of or parting with an asset or interest in an asset.'" A-011 (quoting 6 Del. C. § 1301(12)). Therefore, under DUFTA's plain meaning, a transfer "by a debtor" includes a transfer "executed by an 'instrumentality of' the debtor or 'on its behalf.'" A-012. This is exactly the nature of the transfer set forth in Crystallex's complaint. Thus, Crystallex "properly allege[d] the existence of a fraudulent transfer." A-011-12.

In denying in relevant part PDVH's motion to dismiss, the District Court also rejected PDVH's argument that the FSIA barred Crystallex's fraudulent transfer claim because the court was "not persuaded by [PDVH's] attempt to stretch the [FSIA] statute's 'immunity from attachment arrest and execution' to become

immunity from all liability for the transfer of property that was not attachable at the time of transfer." A-017 (quoting 28 U.S.C. § 1609). The District Court held that, not only is there "nothing in the FSIA's text that bars eventual liability for a transfer of property which was immune from attachment when the transfer was made," but the FSIA itself also expressly provides that, "'[a]s to any claim for relief with respect to which a foreign state is not entitled [to jurisdictional immunity from suit], the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances.'" *Id.* (citing 28 U.S.C. § 1606) (alterations in original). Therefore, the District Court concluded, "a remedy based on a prejudgment transfer is not the same as attaching funds prior to the entry of judgment." A-018.

PDVH subsequently sought certification for interlocutory review, pursuant to 28 U.S.C. § 1292(b), of the District Court's rulings on both the FSIA question and the DUFTA question. D.I. 41, 42. PDVH simultaneously filed a notice of appeal of the FSIA question under the collateral order doctrine. A-023. The District Court granted PDVH's motion on December 27, 2016, A-069-74, and this Court accepted PDVH's petition for interlocutory review on February 10, 2017, A-025-29.

## RELATED CASES AND PROCEEDINGS

## I.    THE CONFIRMATION OF THE ARBITRAL AWARD

The arbitration establishing that Venezuela is liable to Crystallex for its expropriation of Crystallex's rights to the Las Cristinas mine began in 2011. On April 4, 2016, the Washington, D.C.-seated arbitral tribunal issued its award, directing Venezuela to pay approximately $1.2 billion, plus pre-award interest of approximately $200 million as of the date of the award. Crystallex immediately sought confirmation of the award, in the United States District Court for the District of Columbia. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Civ. No. 16-cv-00661-RC (D.D.C. 2016). On March 25, 2017, the District Court for the District of Columbia issued an order confirming the arbitral award against Venezuela, rejecting Venezuela's challenges to the award, and directing entry of judgment in Crystallex's favor in the amount of $1,202,000,000 plus pre- and post-award interest. Crystallex's motion, pursuant to 28 U.S.C. § 1610(c), for an order finding that a reasonable time has passed since entry of the D.C. District Court's judgment—such that Crystallex may seek to execute against Venezuela's assets in satisfaction of the judgment—is currently pending.[7]

---

[7]    Crystallex disputes PDVH's contention that entry of judgment in that action is relevant to the question before this Court. DUFTA expressly gives standing to those whose claims have not yet matured. Regardless, the D.C. District Court's entry of judgment moots PDVH's argument that the remedies that Crystallex seeks

## II.    *CRYSTALLEX II*: SUBSEQUENT FRAUDULENT TRANSFER LITIGATION

Within weeks of the District Court's decision denying PDVH's motion to dismiss *Crystallex I*, PDVH and PDVSA took further steps to delay and hinder creditors like Crystallex.  Specifically, during the pendency of this lawsuit, PDVH encumbered half of its CITGO Holding stock for the benefit of PDVSA's creditors for no consideration to PDVH.  Consequently, on October 28, 2016, Crystallex filed a second DUFTA suit against PDVH, alleging another fraudulent transfer.  D.I. 1 in *Crystallex Int'l Corp. v. PDV Holding, Inc.*, C.A. No. 16-1007-LPS (D. Del. Filed Oct. 28, 2016) ("*Crystallex II*").  The complaint in *Crystallex II* alleged that PDVH, during the pendency of *Crystallex I* and at the behest of PDVSA, pledged 50.1% of its stock in CITGO Holding as collateral for new bonds that *PDVSA* issued to third parties.  Like in *Crystallex I*, the transfer was for the sole benefit of PDVSA, and PDVH received no consideration for pledging away its assets.

After filing its complaint in *Crystallex II*, Crystallex learned of a second post-decision fraudulent transfer.  After pledging 51.1% of its interest in CITGO Holding, PDVH pledged—for no consideration—the remaining 49.9% of its CITGO Holding stock as collateral to guaranty PDVSA Petróleos, S.A.'s repayment obligations to

---

in the action below are "pre-judgment" remedies as to Venezuela, as any remedy in this action will necessarily follow a "judgment sufficient to generate a debtor-creditor relationship between Crystallex and Venezuela."  Appellant PDV Holding, Inc.'s Opening Brief ("PDVH Br.") 28 n.16.

Russian oil giant Rosneft for Rosnefts $1.5 billion loan to *PDVSA*. Crystallex filed an amended complaint in *Crystallex II* on January 4, 2017, to include allegations regarding this additional fraudulent transfer and to add claims against PDVSA and the counterparties to the liens on PDVH's assets. D.I. 18 in *Crystallex II*. While PDVH contends in its opening brief that *Crystallex II* rises and falls on the issues before this Court, the relevance of the District Court's decision in *Crystallex I* to the pending claims in *Crystallex II* has not been briefed to the District Court and is not before this Court on the instant appeal.

## JURISDICTION AND STANDARD OF REVIEW

The District Court has jurisdiction over this case pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1367. This Court has jurisdiction to hear PDVH's interlocutory appeal with respect to both the FSIA and DUFTA issues pursuant to 28 U.S.C. § 1292(b).

This Court has plenary review of the District Court's denial of PDVH's Rule 12(b)(6) motion to dismiss. *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242 (3d Cir. 2015). "In this review," the Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* (internal quotations omitted).

## STATEMENT OF THE ISSUES

The following two issues are before this Court on interlocutory review:

1.      Whether the District Court properly concluded that the FSIA's restriction on prejudgment attachment does not preempt Crystallex's DUFTA claim against PDVH, which seeks only post-judgment relief.

2.      Whether the District Court properly concluded that Crystallex stated a DUFTA claim against PDVH in light of PDVH's intentional efforts to hinder and delay creditors.

## SUMMARY OF THE ARGUMENT

1.      The District Court properly concluded that the FSIA does not bar Crystallex's DUFTA claim against PDVH.  The FSIA does not preempt DUFTA and PDVH, a non-sovereign Delaware corporation, is not entitled to immunity from suit.  By its express terms, the FSIA does not displace state law causes of action; instead, it provides that, "[a]s to any claim for relief with respect to which a foreign state is not entitled to [jurisdictional] immunity . . . , the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 1606.  Moreover, the FSIA provisions regarding prejudgment attachment immunity for sovereign property, on which PDVH's preemption argument wholly relies, are not implicated by Crystallex's DUFTA claims against PDVH.  As the District Court held, Crystallex, by its DUFTA claims, seeks to hold PDVH liable on

15

the merits for a fraudulent transfer that it effected on PDVSA's behalf.  The mere possibility of a liability finding against PDVH does not "encumber" or otherwise effectively operate as a prejudgment attachment on sovereign property, as the sovereign retains full use and control of its property, subject to the same litigation risks that all private parties seeking to hinder and delay creditors face.  PDVH's preemption argument is without merit.

2.    The District Court also properly held that Crystallex stated a DUFTA claim against PDVH.  "A transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor."  6 Del C. § 1304(a)(1).  As the District Court determined, PDVH's issuance of a dividend of more than $2 billion to PDVSA at PDVSA's direction was an indirect transfer "by the debtor" within the meaning of DUFTA, and PDVH may be liable under DUFTA as a non-debtor transferor.  Alternatively, as Crystallex argued below in opposition to PDVH's motion to dismiss, PDVH may be liable as a transferee based on its having received a multibillion-dollar dividend from CITGO Holding that preceded PDVH's own dividend to PDVSA, all of which should be viewed as one cohesive fraudulent transfer.

# ARGUMENT

## I.    THE DISTRICT COURT PROPERLY HELD THAT THE FSIA DOES NOT BAR CRYSTALLEX'S DUFTA CLAIM

The FSIA provides, as the District Court found, that sovereigns are liable like private actors.  The FSIA creates certain hurdles to the assertion of jurisdiction over a sovereign, but jurisdictional immunity is not at issue here.  PDVH is not a foreign sovereign; it is a Delaware corporation.  As such it has no jurisdictional immunity under the FSIA.  PDVH does not contend otherwise.

PDVH attempts to shield itself from Crystallex's claims by invoking the FSIA's restrictions on prejudgment attachment of sovereign property.  PDVH, however, concedes that Crystallex does not seek a prejudgment attachment.  Instead, PDVH argues that the prospect that a court might find it liable for an intentionally fraudulent transfer is "effectively" the same as a court-ordered "attachment arrest and execution," 28 U.S.C. § 1609, because the possibility of liability would discourage or otherwise hinder sovereigns from transferring assets in violation of state law.  PDVH's attempt to avoid liability under DUFTA based on the FSIA's preclusion of certain prejudgment remedies is without support.  Neither the express language of, nor the purposes underlying, the FSIA's prejudgment attachment immunity provisions remotely suggests that Congress intended for that provision to preempt Crystallex's state-law DUFTA claim.  No court has ever held that the FSIA precludes a state-law fraudulent transfer claim.

The District Court properly concluded that the FSIA's prejudgment attachment provision is inapplicable to this case, and PDVH's preemption arguments should be rejected.

## A.    The FSIA Does Not Limit PDVH's Liability

PDVH, a Delaware corporation, is not—and does not claim to be—a foreign sovereign.  Yet PDVH argues that the FSIA bars Crystallex from asserting a claim against it for its role in the fraudulent transfer of more than $2 billion dollars of dividends—which were issued with the express intent to hinder creditors—from the United States to Venezuela.  PDVH cannot hide behind its parent's sovereign immunity.  The United States Supreme Court made that clear more than a decade ago in *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003).  "The FSIA's definition of instrumentality refers to a foreign state's majority ownership of 'shares or other ownership interest.'"  *Id*. at 476 (quoting 28 U.S.C. § 1603(b)(2)).  "[A] transitive property of ownership does not apply under the FSIA . . . ."  *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 30 (D.D.C. 2010).  An indirect subsidiary is not immune under the FSIA.  *Id*.  In short, the FSIA's immunity provisions do not govern jurisdiction over, or remedies applicable to, PDVH and its assets.

## B.    The FSIA Does Not Preempt the Application of DUFTA in This Case

"Pre-emption fundamentally is a question of congressional intent," *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 284 (3d Cir. 2006), which "'is the ultimate

touchstone' in every pre-emption case," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  The preemption analysis "starts with the basic assumption that Congress did not intend to displace state law." *Bldg. & Const. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224 (1993).  Courts "have long presumed that Congress does not cavalierly pre-empt state-law causes of action," and, consequently, a court will determine that state law is preempted only if that is the "clear and manifest purpose of Congress." *Medtronic*, 518 U.S. at 485. "[W]here the intent to override is doubtful, our federal system demands deference to long-established traditions of state regulation." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546 (1994).

Fraudulent conveyance statutes such as DUFTA have been the subject of state laws since before the founding of this nation.  The modern version, "[t]he Uniform Fraudulent Transfer Act . . . has been adopted by 43 states," *In re Mirant Corp.*, 675 F.3d 530, 537 n.3 (5th Cir. 2012), including Delaware, and its predecessor, the Fraudulent Conveyance Act, was first "enacted in 1924" and "is a uniform state law that codifies both common and statutory law stretching back at least to 1571." *Boston Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504, 1505-06 (1st Cir. 1987) (Breyer, J.).  This Court must consider PDVH's preemption arguments in the context of this long history of state control over fraudulent transfer claims.

> **1.    Crystallex's Claim for DUFTA Liability Does Not Constitute an "Attachment" Within the Meaning of the FSIA**

Each of PDVH's preemption arguments hangs from a single thread—the FSIA's restrictions on prejudgment relief, and, specifically, Section 1609's limitations on prejudgment attachments.  In its complaint, however, Crystallex seeks only prospective relief to be entered after PDVH's (and PDVSA's) liability has been established.  Crystallex does not seek an attachment or any other provisional remedy.  *See* A-066.  PDVH does not seriously dispute that fact.  Instead, PDVH asserts that the mere possibility of a liability finding—after trial—against PDVH, a non-sovereign, on Crystallex's DUFTA claim operates as a retroactive "encumbrance" on PDVSA's property and serves as an "end-run" around the FSIA's prejudgment attachment immunity provisions.  *See* PDVH Br. 10, 21.  This argument defies logic.

As the District Court recognized, Crystallex's DUFTA claim does not seek to prevent any prejudgment transfer of PDVSA's (or Venezuela's) assets.[8]

---

[8]    As the District Court noted, any injunctive relief that Crystallex may obtain at the conclusion of its DUFTA action will be post-judgment in nature and therefore undeniably will not implicate Section 1609, even if such relief operates to restrain PDVSA's, as opposed to PDVH's, assets.  *See* A-014 (finding that Crystallex's claim "seeks relief based on an alleged scheme to devalue certain potentially executable assets, relief that would only be obtained (or, from [PDVH's] perspective, imposed) *after* judgment is entered in this case" (emphasis in original)).

PDVH claims that the relevant "judgment" is the District of Columbia's judgment confirming Crystallex's arbitration award rather than the District Court's

Crystallex's pursuit of a post-judgment "remedy based on a prejudgment transfer is not the same as attaching funds prior to the entry of judgment." A-018. PDVSA was—and, pending entry of a judgment in this action, is—able to move its assets if it chooses to do so. But it cannot transfer—or direct others, like PDVH, to transfer—its assets with the intent to hinder and delay creditors. The FSIA specifically provides that a foreign sovereign is "liable in the same manner and to the same extent as a private individual under like circumstances" on "any claim for relief with respect to which a foreign state" is not otherwise "entitled to immunity." 28 U.S.C. § 1606. Thus, like any other debtor, PDVSA faces liability if it transfers property with the actual intent to hinder or delay creditors. Likewise, as discussed *infra* at 31-45, PDVH faces liability if it transfers PDVSA's property in bad faith and at PDVSA's behest.

PDVH does not contend that its multibillion-dollar dividend to PDVSA was an ordinary-course transaction. PDVH does not dispute that Crystallex's complaint adequately alleges that PDVH knowingly effected the transfer of PDVSA's assets on PDVSA's behalf with an intent to hinder and delay creditors like Crystallex. And

---

judgment on Crystallex's DUFTA claim. PDVH Br. 28 n.16. This claim was properly rejected by the District Court. A-019 n.15. In any event, the argument is now moot. Crystallex has a judgment against Venezuela, and any relief entered by the District Court after judgment in this action also necessarily will be post-judgment relief as to Venezuela.

PDVH does not dispute that a declared but unpaid dividend can be attached and executed upon post-judgment.   In light of these concessions, the District Court rightfully rejected PDVH's "attempt to stretch the [FSIA's] 'immun[ity] . . .' to become immunity from all liability for the transfer of property that was non-attachable at the time of transfer."   A-017 (citation omitted) (second alteration in original).

PDVH is unable to cite a single case in which a court has held that a plaintiff's attempt to establish fraudulent transfer liability on the merits is preempted by—or even implicates—Section 1609's restriction on prejudgment attachment of sovereign assets.   Instead it relies on a handful of cases that have held that preliminary injunctions and prejudgment security deposits "effect the same result" as prejudgment attachments.   These cases are inapposite because they deal "with provisional remedies sought during the pendency of an underlying civil action." A-018; *see* PDVH Br. 23-24, *citing Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 2891 (2015) (deciding whether state law "prejudgment security" requirement was an "attachment" for purposes of the FSIA); *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159 (11th Cir. 2011) (holding that the FSIA preempts federal law in action regarding prejudgment attachment of salvaged shipwreck); *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411 (2d Cir. 1983) (analyzing whether

a preliminary injunction that "immobilize[d] defendants' assets" was effectively a prejudgment attachment under the FSIA); *Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226 (2d Cir. 1995), amended (Jan. 11, 1996) (holding that prejudgment security requirement was precluded under the FSIA); *Raji v. Bank Sepah-Iran*, 495 N.Y.S.2d 576 (N.Y. Sup. Ct. 1985) (denying prejudgment motion to stay Iranian bank from removing assets from New York during pending litigation). In each case, the non-sovereign party asked the court to enter an order that would prevent the transfer, or use, of some or all sovereign assets before liability was determined. But Crystallex seeks no such order. And, while it is true that the risk of liability might discourage foreign sovereigns and their instrumentalities from violating state law, encouraging compliance with state law is not an "encumbrance" of sovereign assets. There is no "attachment arrest or execution," as set forth in Section 1609, sought here.

PDVH argues that its cited cases not only limit prejudgment remedies *prior to* a finding of liability, but also serve to create an affirmative and absolute freedom from liability for intentional misconduct at any time. PDVH's argument conflates liability and remedies. "[T]he purpose of the FSIA was not to alter the substantive liability of foreign states with respect to their activities and property subject to the jurisdiction of the United States." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 253 (2d Cir. 1999). Determining on the merits that a party is liable for its

wrongful actions—and awarding post-judgment remedies based on that finding of liability—is inherently different from restraining that party's actions in advance, and courts, including in the DUFTA context, have recognized that distinction. "[S]eeking a preliminary injunction in anticipation of a later judgment," on the one hand, is distinct from "bringing a claim, on the merits, for fraudulent transfer," on the other hand, and the fact "[t]hat a plaintiff may not enjoin a potential debtor's transfer of his assets prior to obtaining a judgment does not preclude that plaintiff from later claiming that such transfer was fraudulent." *Seiden v. Kaneko*, No. CV 9861-VCN, 2015 WL 7289338, at *14 (Del. Ch. Nov. 3, 2015). Crystallex's DUFTA claim, which seeks first to find PDVH and PDVSA liable, and then to impose remedies based on that determination after judgment, is not barred by the FSIA's restriction on prejudgment attachment of sovereign property.[9]

The District Court did not err in recognizing that none of PDVH's cases stands for the proposition that "attachment immunity equals lawfulness and, therefore, precludes all conceivable forms of potential liability" after a determination on the

---

[9]    In light of additional fraudulent transfers by PDVH during the pendency of this lawsuit, the District of Columbia's confirmation of Crystallex's arbitral award against Venezuela, and PDVH's statement, in response to the issuance of that award, that it is free to move its own assets at any time, Crystallex recently moved the District Court for a preliminary injunction restricting further transfers of *PDVH's* own assets outside the ordinary course. D.I. 64. That motion is based on PDVH's conduct and is expressly limited to PDVH's property.

merits.10  A-017.  The inability to obtain a prejudgment attachment on a claim does

not mean that there can be no liability after trial.  *See Seiden*, 2015 WL 7289338,

at *14.  The District Court thus properly concluded that the FSIA's prejudgment

attachment provision is inapplicable to this case.

### 2. The FSIA Expressly Provides That, Once Jurisdiction Is Established, Sovereigns Are Subject to Liability as if They Were Private Litigants

The FSIA expressly states that a foreign sovereign is "liable in the same

manner and to the same extent as a private individual under like circumstances" on

"any claim for relief with respect to which a foreign state" is not otherwise "entitled

to immunity."  28 U.S.C. § 1606.  PDVH makes no mention of FSIA Section 1606

in its opening brief, even while arguing that Section 1609 expressly preempts

DUFTA.  The reason is simple: Section 1606 is fatal to PDVH's argument.11

---

10    PDVH also argues that the specter of damages liability for parties that routinely transfer sovereign assets, like banks, will operate as a prejudgment restraint on sovereign assets.  *See* PDVH Br. 31-32, 34-35.  But PDVH cites no authority to support this argument, and, as discussed *infra* at 44, the District Court's interpretation of DUFTA does not expose banks, or other parties that transfer sovereign property in good faith and in the ordinary course, to liability.

11    Nothing in Sections 1609, 1610, or 1611 alters that fact.  *See id*. §§ 1609 ("[T]he property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter."), 1610 (providing that, under various circumstances, sovereign property "in the United States" that is "used for a commercial activity in the United States . . . shall not be immune from attachment in aid of execution . . . upon a judgment entered by a court of the United States or of a State"), 1611 (setting forth exceptions to

Notwithstanding the fact that the FSIA expressly imposes liability upon foreign sovereigns as if they were private litigants—so long as jurisdiction attaches, which PDVH does not challenge on appeal—PDVH argues that Section 1609 precludes the Court from applying the provisions of DUFTA to PDVH, a Delaware corporation. The FSIA does not impact the liability of PDVH—a non-sovereign— at all. Moreover, under the FSIA, PDVSA—PDVH's parent—is "liable in the same manner and to the same extent as a private individual under like circumstances." Section 1606 cannot be read out of the FSIA. PDVH's argument that it is free from liability for its undisputed role in PDVSA's fraudulent transfer must fail. The FSIA cannot be read to expressly preempt that which it expressly permits.

### 3.    The FSIA Leaves the Determination of the Scope (and Existence) of Liability to Existing Law

The terms of the FSIA also make clear that field preemption cannot apply. The FSIA addresses jurisdiction. It does not set forth a comprehensive liability regime; to the contrary, it subjects sovereigns to existing state law—a foreign sovereign is "liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. Field preemption exists only where the "scheme of federal regulation [is] so pervasive as to make reasonable the

---

Section 1610). PDVH's argument that the FSIA attachment provisions expressly preempt DUFTA is without merit. *See Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (noting that "[e]xpress preemption applies" only "where Congress, through a statute's express language, declares its intent to displace state law").

inference that Congress left no room to supplement it." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983).  As discussed *infra* at 28-30, the FSIA specifically was designed not to displace state law governing substantive liability.  In light of Congress's deliberate preservation of existing substantive law in enacting the FSIA, PDVH cannot seriously be heard to argue that the FSIA's prejudgment attachment provisions were meant to "occupy the field," and thus preclude state-law fraudulent-transfer liability.[12]

### 4.   DUFTA Does Not Conflict with the Purposes Underlying the FSIA's Prejudgment Attachment Immunity Provisions

The FSIA does not provide PDVH, a non-sovereign, with freedom from liability.  In arguing to the contrary, PDVH ignores the FSIA provision that addresses liability on which the District Court relied in denying its motion to dismiss. As discussed above, PDVH attempts to turn Section 1609 of the FSIA—which provides that, subject to certain exceptions, the remedy of prejudgment attachments

---

[12]   The cases on which PDVH relies do not address Congress's purposes in enacting the FSIA's attachment immunity provisions.  *See Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254-58 (2014) (holding that neither the FSIA's jurisdictional immunity provisions nor its attachment immunity provisions limits discovery in aid of execution of a foreign sovereign judgment debtor's assets); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-43 (1989) (considering FSIA's jurisdictional provisions and holding that they provide the sole basis for obtaining jurisdiction over foreign sovereign); *Zschernig v. Miller*, 389 U.S. 429, 430-41 & n.1 (1968) (considering Oregon state law that purported to expressly regulate the property rights of "alien[s] not residing within the United States" and concluding that this particular state law intruded on federal domain over foreign policy).

of sovereign assets is unavailable, *see* 28 U.S.C. §§ 1609, 1610, 1611—into a bar to liability.   According to PDVH, there is an irreconcilable conflict between Section 1609 of the FSIA and DUFTA.  In reality, no such conflict exists.

Conflict preemption "nullifies state law inasmuch as it conflicts with federal law, either where compliance with both laws is impossible or where state law erects an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (internal quotations omitted).  The FSIA provides a jurisdictional framework and guidance as to what remedies are available against foreign sovereigns, both pre- and post-judgment.   "[W]here state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 622 n.11 (1983).  The FSIA "and the regime that it replaced[] do not by their own force create or modify substantive rights." *Republic of Austria v. Altmann*, 541 U.S. 677, 703 (2004) (Scalia, J., concurring); *see also Brenntag Int'l Chems., Inc.*, 175 F.3d at 253 ("The purpose of the FSIA was not to alter the substantive liability of foreign states with respect to their activities and property subject to the jurisdiction of the United States.").

PDVH argues that "FSIA attachment immunity is part of a comprehensive federal statute offering powerful protection for foreign sovereigns and their

property," and that "[o]ne aspect of this protection is that foreign sovereigns are free to move their assets out of the United States unless and until . . . [a] creditor has reduced a debt to judgment." PDVH Br. 35. But PDVH cites no authority to support its position that sovereigns, much less sovereign instrumentalities, the assets of which are more readily subject to execution, are free to use Delaware corporations to move assets with impunity, particularly if such movement is done with the intent to hinder or delay creditors. *See* PDVH Br. 33-34, *citing Dole Food Co.*, 538 U.S. at 478-80 (considering purposes underlying FSIA's *jurisdictional* immunity provisions); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1123-29 (9th Cir. 2010) (determining that district court did not err in considering sovereign immunity *sua sponte*); *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 247-61 (5th Cir. 2002) (considering whether property at issue fell within exceptions to attachment immunity set forth in Section 1610); *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 206-09 (3d Cir. 2003) (considering FSIA's jurisdictional immunity provisions).

This is unsurprising. The purpose of the FSIA was not to protect sovereigns from liability. At the same time that Congress enacted the statute's jurisdictional hurdles, it also acted to ensure that sovereigns could not invoke sovereign immunity to avoid liability for their commercial acts—including acts such as those taken by PDVSA in directing the debt offerings and subsequent dividends at issue here. For

this reason, the FSIA is not a defense to liability once jurisdiction is established. "The principal purpose of foreign sovereign immunity has never been to permit foreign states and their instrumentalities to shape their conduct in reliance on the promise of future immunity from suit in United States courts." *Altmann*, 541 U.S. at 696. The FSIA is limited to establishing "when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and to provide when a foreign state is entitled to sovereign immunity." H.R. Rep. No. 94-1487 at 6. As Congress explained, the FSIA "is intended to preempt [only] any other State or Federal law . . . for according immunity to foreign sovereigns, their political subdivisions, their agencies, and their instrumentalities," *id*. at 12, and "is not intended to affect the substantive law of liability," *id*. Thus, contrary to PDVH's claims, the FSIA's preemptive effects are, by design, quite narrow.

Given Congress's intent, courts have recognized that the FSIA's prejudgment attachment restrictions have nothing to do with granting a foreign sovereign an unfettered right to transfer assets prior to judgment. Rather, "[t]he reason for this limitation is to prevent the location of the property from conferring jurisdiction on the court—*i.e.*, to prevent *in rem* and *quasi-in-rem* actions from undermining the general principles codified in the FSIA." *Brenntag Int'l Chems., Inc.*, 175 F.3d at 253. "As quid pro quo for the liberal availability of in personam jurisdiction . . . Congress took steps to eliminate the disfavored and now unnecessary use of

30

jurisdictional attachments." *Geveke & Co. Int'l, Inc. v. Kompania Di Awa I Elektrisidat Di Korsou N.V.*, 482 F. Supp. 660, 663 (S.D.N.Y. 1979); *see also Williams v. Shipping Corp. of India*, 653 F.2d 875, 878 (4th Cir. 1981) (noting that one of the FSIA's purposes was "eliminating quasi-in-rem jurisdiction based on the attachment of property of a foreign state").

In other words, the enforcement provisions of the FSIA "merely limit[] the power of United States courts . . . [they] do[] not vest in [a foreign sovereign] a 'right' not to pay a valid judgment against it." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477-78 (9th Cir. 1992). In light of the limited nature of the FSIA, there is no right under the FSIA with which enforcing the provisions of DUFTA could possibly interfere. Accordingly, DUFTA's prohibition of intentionally fraudulent transfers that are designed to hinder creditors, like Crystallex, applies equally to debtors that are private individuals and debtors that are foreign sovereigns.

## II.    THE DISTRICT COURT PROPERLY HELD THAT CRYSTALLEX STATED A DUFTA CLAIM AGAINST PDVH

### A.    DUFTA Imposes Liability on Non-Debtor Transferors Such as PDVH

It is undisputed that Crystallex has alleged adequately that PDVSA and PDVH acted with actual intent to hinder and delay creditors in monetizing PDVSA's interest in its Delaware subsidiaries and then transferring billions of dollars out of

the United States via a dividend while litigation was pending against Venezuela and

its alter ego, PDVSA.  It is undisputed that neither PDVH nor CITGO Holding

received any consideration for the more than $2 billion that they paid to an insider,

PDVSA, or that the payment of the dividend left CITGO Holding insolvent on a

GAAP basis.  And PDVH does not challenge the District Court's determination that

the dividend to PDVSA constituted "property of the debtor" under DUFTA.  *See*

PDVH Br. 11-12 & n.9.  And yet PDVH asks this Court to find that it cannot be held

liable for its intentional acts, made in bad faith, in transferring $2 billion dollars out

of the country to hinder and delay PDVSA's creditors.

Ignoring the broad remedial purpose of DUFTA, PDVH argues that the

District Court's application of DUFTA's provisions concerning transfers made "by

a debtor" to transfers made at the debtor's direction is too expansive.  Specifically,

PDVH claims that the language "by a debtor" sets the absolute boundary of liability,

such that a non-debtor transferor, like PDVH, that acted in bad faith at the behest of

the debtor is outside its scope.  PDVH's narrow interpretation of DUFTA is without

merit.

DUFTA, like all versions of the Uniform Fraudulent Transfer Act ("UFTA"),

is intended to serve a broad remedial purpose.  *See, e.g.*, *Lake Treasure Holdings,*

*Ltd. v. Foundry Hill GP LLC*, C.A. No. 6546-VCL, 2014 WL 5192179, at *15 (Del.

Ch. Oct. 10, 2014) ("DUFTA grants a court 'broad latitude' . . . to craft a remedy to

'put a creditor in the position she would have been in had the fraudulent transfer not occurred.'"). Statutory prohibitions on acts to hinder and delay creditors have been in place for 450 years, going back at least to the Statute of 13 Elizabeth, which was enacted in 1571 to ban transactions that were "devised and contrived of malice, fraud, covin, collusion or guile, to the end, purpose and intent to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts, etc." 13 Eliz 1, c 5. Hundreds of years of history have taught that fraudulent transfer laws and their associated remedies must be broadly construed. *Leifer v. Murphy*, 149 Misc. 455, 459 (N.Y. Sup. Ct. 1933) (fraudulent conveyance laws were enacted in "recognition of the myriad schemes resorted to by judgment-debtors, potential and actual, to defeat the enforcement of judgments").

Courts have found that the UFTA's predecessor, the Uniform Fraudulent Conveyance Act ("UFCA"), "is a remedial statute designed to furnish a creditor, as therein defined, full, complete and speedy relief against his fraudulent debtor" that "should therefore receive a liberal construction by the courts in order to accomplish that purpose." *Id*. (internal quotations and citation omitted). Like the UFCA, the UFTA—including DUFTA—"is remedial in nature" and "should be liberally construed." *Klein v. King & King & Jones*, 571 F. App'x 702, 704 (10th Cir. 2014) (quoting *Nat'l Loan Inv'rs, L.P. v. Givens*, 952 P.2d 1067, 1069 (Utah 1998)) (alteration in original) (internal quotations omitted); *In re Mobilactive Media, LLC*,

C.A. No. 5725-VCP, 2013 WL 297950, at *32 (Del. Ch. Jan. 25, 2013) ("DUFTA provides broad remedies to creditors and leaves considerable leeway for the exercise of equitable discretion," and "the trial court has broad latitude to exercise its equitable powers to craft a remedy appropriate to the circumstances of a fraudulent transfer.") (internal quotations omitted).    If interpreted narrowly and without flexibility, fraudulent transfer laws will serve as instruction manuals on how to construct asset transfers that fall outside their scope.  DUFTA was enacted to protect creditors, not to excuse attempts to avoid paying one's debts.  *See id.* ("The overarching goal in applying [DUFTA] remedies is to put a creditor in the position she would have been in had the fraudulent transfer not occurred.").  The District Court correctly held that a dividend of over $2 billion to PDVSA, at PDVSA's direction and for PDVSA's benefit, was a transfer by the debtor and thus actionable under DUFTA, including against PDVH, which is alleged to have transferred the debtor's property in order to effect the fraudulent transfer.

### 1.    Under DUFTA, Transfers "By a Debtor" Include Transfers Made at the Debtor's Behest

DUFTA Section 1304 provides that "[a] transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor."  6 Del C. § 1304(a)(1). "Transfer," in turn, is defined as "every mode, direct or *indirect*, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an

interest in an asset," "[a]sset" is defined as "property of a debtor," and "property" is defined as "anything that may be the subject of ownership." *Id.* §§ 1301(2), 1301(10), 1301(12) (emphasis added).

The question before the District Court was whether the payment and transfer of more than $2 billion that belonged to PDVSA out of the United States at PDVSA's direction was an indirect transfer of PDVSA's assets. The District Court answered in the affirmative, concluding that the cramped interpretation of DUFTA's "by a debtor" language that PDVH proposed was inconsistent with the statute's plain language and its broad remedial purpose. Considering the plain language of the statute, which "includes within its ambit 'indirect . . . mode(s) . . . of disposing of or parting with an asset or an interest in an asset,'" and the dictionary definition of the undefined term "by," the District Court concluded, based on "the ordinary meaning of the words," that a transfer executed by an "'instrumentality of' the debtor or on its behalf" is a transfer "by" the debtor.[13] *See* A-011-12. In other words, because

---

[13]    The District Court's consideration of Merriam-Webster's definition of the word "by"—"'through the agency or instrumentality of' and 'on behalf of,'"—A-011—reflects a well-accepted approach to statutory interpretation. *See, e.g.*, *Eid v. Thompson*, 740 F.3d 118, 123 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 175 (2014) ("When words are left undefined, we have turned to 'standard reference works such as legal and general dictionaries in order to ascertain' their ordinary meaning."); *Cephas v. State*, 911 A.2d 799, 801 (Del. 2006) ("Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined . . . .") (internal quotations omitted).

"[t]he only reasonable view of the Transactions, as alleged, is of an extraction of funds orchestrated by and carried-out under orders from Venezuela and/or [PDVSA]; that [transfer] is, a transfer made in every meaningful sense 'by a debtor.'" *Id*. at A-012. Crystallex "properly allege[d] the existence of a fraudulent transfer under DUFTA" because it alleged "a transfer of a debtor's property at the debtor's behest." *Id*. That is all that DUFTA requires.[14]

PDVH asks this Court to ignore DUFTA's express inclusion of "indirect" transfers by a debtor. And yet, PDVH offers no authority for its position, which is contrary to the express language of the statute. Courts interpreting DUFTA and other substantially similar UFTA provisions have confirmed that "indirect" transfers

---

[14]    None of the cases that PDVH cites supports the narrow interpretation of DUFTA that it proposes. Indeed, PDVH's cases say nothing about whether a non-debtor can be held liable for a fraudulent transfer of the debtor's property—particularly where the debtor owns 100% of the stock of the transferor and the non-debtor knowingly and in bad faith transfers the debtor's property in its possession. *See Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, C.A. No. 7994-VCN, 2016 WL 769586, at *2-3 (Del. Ch. Feb. 18, 2016) (finding that the plaintiff-trustee did not have standing because the transferred assets did not belong to the debtor); *In re Wickes Tr.*, C.A. No. 2515-VCS, 2008 WL 4698477, at *4, *6-8 (Del. Ch. Oct. 16, 2008) (dismissing plaintiff's claims because they were barred by issue preclusion and plaintiff could not establish that she was a creditor of the debtor); *Reserves Mgmt. Corp. v. 30 Lots LLC*, C.A. No. 08C-08-010 JTV, 2009 WL 4652991, at *5-6 (Del. Super. Ct. Nov. 30, 2009) (holding that the alleged transfer did not involve an "asset" because the definition of "asset" excludes property that is encumbered by a lien); *In re Plassein Int'l Corp.*, 366 B.R. 318, 326 (Bankr. D. Del. 2007) (finding that alleged fraudulent transfer did not involve debtor property or allegations of actual intent to defraud creditors).

are actionable.  *See, e.g.*, *Fields v. Three Cities Research, Inc.*, No. Civ. 02-975-AA, 2004 WL 1173158, at *5 (D. Or. May 25, 2004) (considering Delaware law and holding that plaintiff's allegation that debtor "*indirectly transferred* the majority of its assets—[Subsidiary A's] stock—by approving the stock transaction between [Subsidiary A] and [Subsidiary B], with the intent to hinder, delay, or defraud plaintiff" was sufficient to state a claim under DUFTA (and other versions of the UFTA) (emphasis added)).

PDVH also asks this Court to ignore DUFTA's broad remedial purpose and strictly limit those liable for fraudulent transfers to "debtors" and "transferees."  As discussed above, however, DUFTA is meant to be construed broadly and with substantial flexibility, lest its provisions serve as a roadmap on how to avoid liability to those who would avoid their creditors.  *See, e.g.*, *Lake Treasure Holdings, Ltd.*, 2014 WL 5192179, at *15 ("DUFTA grants a court 'broad latitude' for the court to craft a remedy to 'put a creditor in the position she would have been in had the fraudulent transfer not occurred.'"); *Mobilactive Media*, 2013 WL 297950, at *32 ("DUFTA provides broad remedies to creditors and leaves considerable leeway for the exercise of equitable discretion.").  Indeed, DUFTA specifically authorizes courts to order "[a]ny . . . relief the circumstances may require" in order to make creditors whole.  6 Del. C. § 1307(a)(3)(c).

Although no Delaware court has had occasion to rule on the precise question of non-debtor-transferor liability under DUFTA, courts in other jurisdictions have found that bad-faith non-debtor transferors, like PDVH, can be liable under the UFTA and related statutes. In *Gutierrez v. Givens*, for example, the court considered the potential liability under California's UFTA of a non-debtor transferor bank that allegedly was owned and "controlled" by the debtor. 1 F. Supp. 2d 1077, 1080 (S.D. Cal. 1998).[15] The debtor in *Gutierrez* allegedly put his money into a bank, after which the bank "improperly transferred" the debtor's money "to various foreign entities and other members of the asset protection scheme." *Id.* (internal quotations omitted). The plaintiff alleged that, "'[b]ecause of [the debtor's] interest in and control of [the] Bank, [the] Bank knew of the fraudulent purpose for the asset transfers and facilitated those transfers.'" *Id.* The court denied the bank's motion to dismiss, given the "serious allegations of complicity by the bank." *Id.* at 1087.[16]

---

[15] The provision of California's UFTA at issue in *Gutierrez* is nearly identical to the DUFTA provision at issue in this case. *Compare* Cal. Civ. Code § 3439.04(a) *with* 6 Del. C. § 1304(a)(1).

[16] The court recognized, as with Crystallex's claim here, that the plaintiff's claim was based on a transaction that was unusually structured, and that, accordingly, "[p]laintiffs face[d] a challenge in establishing the liability of a non-transferee under UFTA." *Gutierrez*, 1 F. Supp. 2d at 1087. Nonetheless, given UFTA's "broad remedial provision," the court found that the plaintiff should be afforded the opportunity to prove its claim. *Id.*

In another non-debtor transferor case, *In re Carousel Candy Co., Inc.*, the court considered the potential liability under the Bankruptcy Code of the debtor's attorney who, in bad faith, had transferred the debtor's assets to another attorney (and to himself).[17]  38 B.R. 927, 930, 936 (Bankr. E.D.N.Y. 1984).  Although the debtor's attorney argued that his transfer of the relevant funds "was not a transfer within the meaning of section 548" because "there was no transfer from the debtor," the court rejected this argument because the evidence showed that the debtor's attorney "knew that the money he was transferring . . . would not be returned to the debtor" and that he "was part and parcel of a scheme to emaciate the debtor on behalf of himself, [the debtor's other lawyer], [an interested consultant of the debtor], and [the debtor's sole shareholder]."  *Id.* at 930.  In adopting the bankruptcy trustee's proposed findings of fact and conclusions of law, the court held that "[a]n action for

---

[17]    Courts have concluded that Bankruptcy Code Section 548, 11 U.S.C. §548, which the court considered in *Carousel Candy*, is substantially similar to DUFTA Section 1304, on which Crystallex's claim against PDVH is based.  "Because Delaware has adopted the Federal UFTA, a statute that was itself modeled on Section 548 of the Bankruptcy Code (11 U.S.C. § 548), Delaware courts generally recognize that our state and the federal fraudulent transfer statutes' principles are substantially the same.  So the Court looks to federal authority on the subject where necessary."  *Ki-Poong Lee v. So*, C.A. No. N14C-08-173 PRW, 2016 WL 6806247, at *3 (Del. Super. Ct. Nov. 17, 2016); *see also In re PHP Healthcare Corp.*, 128 F. App'x 839, 847 (3d Cir. 2005) (noting that "the provisions of the Delaware Fraudulent Transfer Act . . . are substantially the same as the relevant parts of the Bankruptcy Code," including Section 548).

fraudulent transfer lies against the *transferor*, and initial, immediate or mediate transferees, or the beneficiaries of such transfers—all persons in whose hands the assets of the debtor come to res[t]." *Id.* at 937 (citing 11 U.S.C. § 550) (emphasis added).[18] The court thus concluded that the debtor's attorney, "as initial transferor," was liable to the debtor's trustee.[19] *Id.* at 938.

Moreover, DUFTA envisions that parties other than debtors and transferees may be held liable. DUFTA Section 1307, for example, provides a safe harbor for "any trustee, attorney or other advisor who has not acted in bad faith" in "counseling or *effecting* a transfer." *See* 6 Del. C. § 1307(c) (emphasis added). This provision of the statute would be rendered superfluous if, as PDVH suggests, liability was expressly limited to the debtor and its transferees, and this Court should avoid interpreting the statute in this way. *See United States v. Cooper*, 396. F.3d 308, 312 (3d Cir. 2005) ("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.").

---

[18]    *Compare* 11 U.S.C. § 550 (providing for liability of transferees) *with* 6 Del. C. § 1308 (same).

[19]    Although the debtor's attorney also was a transferee insofar as he transferred some of the debtor's assets to himself, the court's analysis turned on the attorney's status as the "initial transferor" of the debtor's assets. *See Carousel Candy,* 38 B.R. at 938.

"[T]he Complaint alleges a fraudulent transfer to which PDVH was a direct party, making it an appropriate defendant in this case." A-013. PDVH's conduct must be viewed in the context of the overall transaction. Here, PDVH was in the middle of a fraudulent scheme to siphon more than $2 billion in assets out of the United States to its parent company in Venezuela in violation of DUFTA. As part of an integrated plan that left CITGO Holding insolvent on a GAAP basis, PDVH accepted over $2 billion from its subsidiary and then transferred that money to PDVSA with the fraudulent intent to hinder and delay PDVSA's (and Venezuela's) creditors. Thus, "under the circumstances, it would be anomalous to dismiss PDVH because it was merely a transferor rather than a debtor-transferor." *Id.*; *see also Mobilactive Media*, 2013 WL 297950, at *32 (noting that "the trial court has broad latitude to exercise its equitable powers to craft a remedy appropriate to the circumstances of a fraudulent transfer") (internal quotations omitted); *Gutierrez*, 1 F. Supp. 2d at 1087 (denying motion to dismiss where there were "serious allegations of complicity" by the non-debtor transferor).

### 2.    The District Court's Interpretation of DUFTA Does Not Undermine Principles of Corporate Law or Expose Good-Faith Transferors to Liability

PDVH tries to persuade this Court that interpreting DUFTA's "by a debtor" provision to permit liability against bad-faith non-debtor transferors of debtor property like PDVH would fly in the face of "bedrock" Delaware corporate law and

41

expose banks and other non-debtor transferors to liability regardless of whether they possessed fraudulent intent. *See* PDVH Br. 41-44. These arguments are without basis.

PDVH's argument that imposing liability against non-debtor transferors requires disregarding the separate legal existence of the debtor and the transferor is based on a fundamental misunderstanding of Crystallex's claim and the reasoning of the District Court. Alter-ego liability is one way to hold a nominal non-debtor liable for a debtor's acts—it is the basis for PDVSA liability, for example—but it is not the only way. Finding shared intent to hinder and delay creditors does not require piercing the corporate veil. Here, the District Court's decision turned on the specifics of Crystallex's allegations, namely that (i) the transferred property belonged to the debtor, PDVSA; (ii) PDVH received more than $2 billion knowing that it was transferred as part of a scheme to hinder and delay creditors; (iii) PDVH transferred the property at PDVSA's behest; and (iv) the funds were transferred in bad faith. *See* A-011-12 ("[T]he Court must accept as true Plaintiff's allegations of Venezuela's and/or [PDVSA's] extensive, if not dominating, involvement in the Transactions."), A-012 ("The only reasonable view of the Transactions, as alleged, is of an extraction of funds orchestrated by and carried-out under orders from Venezuela and/or [PDVSA]; that is, a transfer made in every meaningful sense 'by

a debtor.'").[20]    Based on Crystallex's specific allegations of PDVSA's control and

PDVH's knowledge and complicity—and not based merely on PDVH's status as

PDVSA's subsidiary—the District Court rightfully held that PDVH's issuance of

the dividend was "by the debtor." *See Gutierrez*, 1 F. Supp. 2d at 1087 (denying

non-debtor transferor bank's motion to dismiss where plaintiff had pled "serious

allegations of complicity"). Thus, the District Court's decision is not based upon

---

[20]    Crystallex's allegations in this regard are extensive. *See, e.g.*, A-031 (¶ 7)
("Venezuela enlisted its alter ego PDVSA . . . to extract as much value as possible
from CITGO . . . by orchestrating a series of debt offerings and asset transfers among
PDVSA and its subsidiaries PDVH and CITGO Holding that converted CITGO's
value to cash, then removing those funds from the United States and transferring
them into PDVSA's coffers in Venezuela."), A-031 (¶ 8) ("PDVSA directed its
wholly-owned subsidiary PDVH to direct its wholly-owned subsidiary CITGO
Holding to issue $2.8 billion in debt, almost all of which CITGO Holding then
proceeded to transfer, without any consideration, to its immediate parent, PDVH, as
a shareholder 'dividend.'"), A-041 (¶ 54) ("Together, Defendants PDVSA, PDVH
and CITGO Holding . . . devised a scheme to extract billions of dollars from CITGO
and then send it out of the country—from the United States to Venezuela—all during
the pendency of multiple lawsuits and arbitrations. Specifically, Venezuela devised
a plan whereby PDVH would cause CITGO Holding to borrow billions of dollars
for no legitimate business purpose, and then transfer those funds, without any
consideration in return, to PDVH as shareholder 'dividends,' where, in turn, those
funds would be paid as a dividend to PDVH's direct parent, again without
consideration, thereby moving the funds to PDVSA outside the United States."),
A-041 (¶ 55) ("The strategy concocted by PDVSA, PDVH and CITGO Holding
involved many steps—in order to conceal and obfuscate the transfer . . . ."), and
A-062 (¶ 162) ("Venezuela's alter ego, PDVSA, caused CITGO Holding to raise
$2.8 billion in debt and execute a series of transactions that moved those debt
proceeds offshore as 'dividends' from CITGO Holding to PDVSA . . . . The debt
proceeds were transferred from CITGO Holding to PDVH, which controls CITGO
Holding and is thus an 'insider.' . . . The debt proceeds were subsequently
transferred from PDVH to PDVSA, which controls PDVH (and CITGO Holding)
and is thus an 'insider.'").

(nor does it require) treating PDVSA and PDVH as one and the same. Quite simply, the District Court's decision does not in any way implicate Delaware law regarding the corporate form.

As an alternative basis for escaping liability, PDVH argues that imposing liability on non-debtors would open the door to a "parade of horribles," such that even ordinary-course asset transfers would cease to occur under fear of false claims and unmeasurable liability. But PDVH's argument ignores that Crystallex's claim is based on PDVH's intentional acts *made in bad faith*. An intentional fraudulent transfer claim, which is what Crystallex alleges in its complaint, is based on a transfer made "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." 6 Del. C. 1304(a)(1). Thus, a DUFTA claim against a non-debtor transferor turns on the transferor's bad-faith actions. Absent wrongful intent, there is no liability. Truly independent third parties—including, in most cases, banks—will not cease to transfer assets. They are protected under DUFTA's safe harbor provision. *See* 6 Del. C. § 1307(c) (discussed *supra* at 40). Thus, under the express terms of the statute, non-debtor transferors, like banks, that are involved in ordinary-course transactions and effect transfers on behalf of debtors in good faith are not at risk of liability. And non-debtor transferors, like PDVH, that act in bad faith and with fraudulent intent when effecting transfers on behalf of debtors are precisely the type

of party that should be subject to liability under DUFTA in accordance with the statute's broad remedial purpose.

### B.    PDVH May Be Liable Under DUFTA as a Transferee

This Court also can affirm the District Court's decision on the alternative ground that PDVH is a transferee within the meaning of DUFTA, as Crystallex argued below.  *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007) ("We exercise plenary review, and affirm on alternative bases supported by the record.") (internal citations omitted).

In opposition to PDVH's motion to dismiss, Crystallex argued that the series of transactions between CITGO Holding, PDVH, and PDVSA that ultimately resulted in the dividend to PDVSA are best viewed as one operative transaction for DUFTA purposes and that PDVH, therefore, should be viewed as a transferee insofar as it received funds from CITGO Holding that, in essence, always were PDVSA's assets.  *See* D.I. 14 at 7-15.  When properly viewing this series of transfers as the singular transaction that PDVSA and PDVH always intended, this Court may uphold the District Court's determination that the complaint states a claim against PDVH under DUFTA on the ground that PDVH was a transferee, even though the District Court did not base its decision on this ground.[21]

---

[21]    As PDVH concedes, under DUFTA's plain language, a creditor may bring a claim against a "transferee."  PDVH Br. 38; *see also* 6 Del. C. §§ 1307, 1308(b);

PDVH's own description of the series of transactions at issue in this case makes plain that it is a transferee: "[I]n 2015, CITGO Holding, Inc. . . . *conducted a bond offering and declared a dividend to its parent Appellant PDV Holding, Inc.* . . . , which in turn declared a dividend to its parent, Venezuela's state-owned oil company (and alleged alter ego of Venezuela) Petroleos de Venezuela, S.A. . . . ." PDVH Br. 1 (emphasis added); *see also id.* at 41 n.19 ("PDVH was only a transferee for the transfer between CITGO Holding and itself."). PDVH maintains that its undisputed status as a transferee at one stage of the overall transaction is insufficient because the billions that CITGO Holding transferred to PDVH were not yet "property of the debtor" within the meaning of DUFTA, notwithstanding the fact that it was publicly announced that the purpose of the transaction was to generate funds to be transferred to PDVSA as a dividend even before the debt was issued. Such attempts to assert form over substance are routinely rejected by courts in the fraudulent transfer context.

It is well established that to determine whether a transaction is fraudulent requires an examination of the transfer as a whole. *See, e.g.*, *Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 211-12 (3d Cir. 1990) (affirming

---

*Mitsubishi Power Sys. Ams., Inc. v. Babcock & Brown Infrastructure Grp. US, LLC*, C.A. No. 4499-VCL, 2009 WL 1199588, at *5 (Del. Ch. Apr. 24, 2009) (noting that, under DUFTA, "a defrauded creditor may seek recovery not only from the transferor but from a transferee as well").

that series of transactions undertaken to preclude creditors from reaching assets should be viewed as "a single, integrated transaction that functioned as a subterfuge"); *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1302-03 (3d Cir. 1986) (affirming that series of transactions, when viewed in the aggregate, combined to create a single fraudulent transfer).  "In equity, substance will not give way to form, and technical considerations will not prevent substantial justice from being done . . . where a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications." *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (internal quotations, alterations, and citations omitted); *In re OODC, LLC*, 321 B.R. 128, 137-38 (Bankr. D. Del. 2005) (denying motion to dismiss because the transactions at issue were properly "collapsed" and viewed "as one integrated transaction").  Even if one step of a complex transaction is not, in and of itself, a fraudulent transfer, courts have refused to "turn a blind eye to the reality that the transfer . . . constituted a single, integrated transaction." *Orr*, 991 F.2d at 35 (finding a fraudulent transfer where a subsidiary received the transferred property as part of the overall transaction).[22]  Here, to look only at the individual links in the

---

[22]    Although the court in *Orr* was interpreting New York's UFCA, many courts have held that case law interpreting the UFCA, the UFTA's predecessor statute, is still relevant to claims brought under the UFTA.  *See In re Canyon Sys. Corp.*, 343 B.R. 615, 634 n.15 (Bankr. S.D. Ohio 2006) ("Similar policies underlie these two uniform acts; thus, the Court relies on case law interpreting both the UFCA and the

chain of events obscures the fact that the transaction as a whole resulted in the removal of the debtor's assets from the United States, the frustration of creditors, and a clear violation of DUFTA.

The flow of funds here—in which CITGO Holding, a Delaware subsidiary of the debtor's alter ego, borrowed $2.8 billion at PDVSA's direction and paid a dividend to its parent, PDVH, which then removed billions from the United States by issuing a further dividend to PDVSA at PDVSA's direction—establishes a singular transaction. And it was a transaction that was designed from the start to extract the value of PDVSA's equity interest in its U.S.-based subsidiaries—value that otherwise would have been subject to execution by creditors—and remove it from the United States. Given the economic reality, the more than $2 billion currently in the possession of PDVSA and Venezuela always belonged to PDVSA. Its form may have changed during the course of the transaction—from equity

---

UFTA."); *In re Harlin*, 321 B.R. 836, 839 (E.D. Mich. 2005) (concluding that "Michigan case law interpreting the [UFCA] is still viable" when interpreting the UFTA and rejecting argument that UFTA "fundamentally altered the nature of a constructive fraudulent transfer from the prior [UFCA]"); *In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557, 572 (Bankr. N.D. Cal. 1994) ("Unless otherwise specified, common-law authorities and case-law dealing with the UFCA, UFTA, Bankruptcy Act of 1898 or the Bankruptcy Code may be cross-referenced whatever the statutory basis of the action at bar."); *Sedwick v. Gwinn*, 873 P.2d 528, 531 (Wash. Ct. App. 1994) ("Cases decided under the UFCA are relevant when interpreting the UFTA because the Acts' provisions are essentially the same.").

interests in a corporation to cash in the form of a dividend—but it belonged to PDVSA from the beginning, as well as throughout the entire process used to (fraudulently) transfer those assets outside of the United States.  The fact that the form of the asset changed does not alter the fact that a fraudulent transfer occurred.[23]

It strains credulity for PDVH to maintain that assets that were always within PDVSA's control, that were liquidated and transferred in a transaction with no economic benefit to PDVH or CITGO Holding, and that ended up in PDVSA's possession, were not always PDVSA's assets.  This Court should not permit PDVH to rely on a "very formalistic argument that the money paid" out from CITGO Holding to PDVH, in its capacity as a transferee, "never belonged to" PDVSA or Venezuela, as the debtor, because "[t]his argument . . . fundamentally misunderstands a basic precept of fraudulent-transfer doctrine: substance trumps form."  *Cont'l Cas. Co. v. Symons*, 817 F.3d 979, 992-93 (7th Cir.), *cert. denied sub nom. Symons Int'l Grp., Inc. v. Cont'l Cas. Co.*, 137 S. Ct. 493 (2016) (rejecting

---

23    "An 'asset' is broadly defined to be 'property of the debtor,' which in turn is broadly defined as 'anything that may be the subject of ownership.'"  *CMS Inv. Holdings, LLC v. Castle*, C.A. No. 9468-VCP, 2015 WL 3894021, at *23 (Del. Ch. June 23, 2015) (quoting 6 Del. C. §§ 1301(2), (10)).  Under this broad definition, an ownership interest in a subsidiary is an "asset" or "interest in an asset."  UFTA § 1 cmt. 10.  The more than $2 billion dividend payment was the end product of the monetization of Venezuela's indirect equity interest in the Delaware holding companies that own CITGO, Venezuela's most significant asset in the United States.  Under DUFTA, that sum represents the value of an "asset" or "interest in an asset" that belonged to Venezuela's alter ego PDVSA even before the final dividend out of the country.

attempts to avoid liability under UFTA based on the same "sleight of hand . . . [that] was the very means of the fraud"). PDVH cannot escape liability by asking this Court to focus on a single aspect of the multistep transaction at issue here. Over $2 billion was received by PDVH with the intent that the money would be paid to PDVSA as a dividend, and that dividend to PDVSA was paid, as part of a single integrated transaction. PDVH was a transferee, as well as a transferor, of the more than $2 billion paid to PDVSA. As such, it is liable under DUFTA.

## CONCLUSION

For the foregoing reasons, Crystallex respectfully requests that the District Court's decision denying PDVH's motion to dismiss be affirmed.

Respectfully submitted,

 /s/ Jason W. Myatt
Robert L. Weigel
Jason W. Myatt
Rahim Moloo
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
Tel:  (212) 351-4000
Fax: (212) 351-4035

and

Raymond J. DiCamillo
Jeffrey L. Moyer
Travis S. Hunter
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel:  (302) 651-7700
Fax: (302) 651-7701

*Attorneys for Plaintiff-Appellee*

Dated:  June 1, 2017

## <u>COMBINED CERTIFICATIONS</u>

### CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June 2017, I caused an electronic PDF copy of the foregoing brief to be filed and served with the Clerk of the Court of the United States Court of Appeals for the Third Circuit via CM/ECF, which will send notification of such filing to counsel for Appellant PDVH Holding, Inc. who are registered CM/ECF users.

### CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this brief is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS

The foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,826 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2016.

## CERTIFICATE OF VIRUS CHECK

I hereby certify that the PDF version of this brief that is being filed electronically with the Clerk of the Court through the CM/ECF system has been scanned for viruses using Symantec Endpoint Protection, version 12.1.6, and no virus was detected.

## CERTIFICATE OF IDENTICAL TEXT

I hereby certify that the text of the electronic brief filed on June 1, 2017, is identical to the text of the hard copies of the brief that are being submitted to this Court.

Dated:  June 1, 2017                    /s/ Jason W. Myatt
                                          Jason W. Myatt