# United States Court of Appeals
## *for the*
# Third Circuit

Case Nos. 16-4012 & 17-1439

CRYSTALLEX INTERNATIONAL CORP.,

*Appellee,*

-v-

PETRÓLEOS DE VENEZUELA, S.A.;
PDV HOLDING, INC.; and
CITGO HOLDING, INC., f/k/a PDV America, Inc.,

*Appellant (PDV Holding, Inc.).*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE DENYING, IN PART, DEFENDANT PDV
HOLDING, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
CIVIL ACTION NO. 1:15-cv-01082-LPS
SAT BELOW: HONORABLE LEONARD P. STARK, U.S.D.J.

## APPELLANT PDV HOLDING, INC.'S REPLY BRIEF

EIMER STAHL LLP
224 S. MICHIGAN AVE., SUITE 1100
CHICAGO, IL 60604
(312) 660-7600

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 NORTH MARKET STREET
WILMINGTON, DE 19801
(302) 351-9294

NATHAN P. EIMER
LISA S. MEYER

KENNETH J. NACHBAR

*Attorneys for Appellant PDV Holding, Inc.*

# Table of Contents

Table of Contents ..................................................................... i

Table of Authorities ............................................................. ii

INTRODUCTION ................................................................. 1

    I.   FSIA Attachment Immunity Preempts Crystallex's
        DUFTA Claim Against PDVH ................................. 3

    II.  Crystallex Fails to State a Claim Under DUFTA ............ 15

CONCLUSION ..................................................................... 24

# Table of Authorities

## Cases

*Dep't of Army v. Blue Fox, Inc.,*
   525 U.S. 255 (1999)..................................................................8

*Devon Robotics, LLC v. DeViedma,*
   798 F.3d 136 (3d Cir. 2015)...................................................5

*Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.,*
   2010 WL 720150 (Del. Ch. Mar. 3, 2010)...........................18

*Exp.-Imp. Bank of the Republic of China v. Grenada,*
   768 F.3d 75 (2d Cir. 2014)...................................................13

*Ferri v. Powell-Ferri,*
   2012 WL 3854425 (Conn. Super. Ct. July 30, 2012).........19

*Fields v. Three Cities Research, Inc.,*
   2004 WL 1173158 (D. Or. May 25, 2004)...........................17

*Filip v. Bucurenciu,*
   129 Cal. App. 4th 825 (Cal. Ct. App. 2005)......................21

*Folmar & Assoc's LLP v. Holberg,*
   776 So.2d 112 (Ala. 2000)..............................................19, 20

*Gen. Am. Life Ins. Co. v. Castonguay,*
   984 F.2d 1518 (9th Cir. 1993)............................................10

*Geveke & Co. Int'l, Inc. v. Kompania DiAwa I Elektrisidat*
   *Di Korsou N.V.,* 482 F. Supp. 660 (S.D.N.Y. 1979)..........10

*Gutierrez v. Givens,*
   1 F. Supp. 2d 1077 (S.D. Cal. 1998)..............................20, 21

*Harger v. Dep't of Labor,*
   569 F.3d 898 (9th Cir. 2009)................................................8

*High Country Citizens Alliance v. Clarke,*
   454 F.3d 1177 (10th Cir. 2006).........................................11

*In re Carousel Candy Co.,*
    38 B.R. 927 (E.D.N.Y. 1984).......................................................20, 21

*In re Citadel Indus., Inc.,*
    423 A.2d 500 (Del. Ch. 1980)....................................................21, 22

*In re Healthco Int'l, Inc.,*
    201 B.R. 19 (Bankr. D. Mass. 1996)................................................20

*Klauder v. Echo/RT Holdings, LLC,*
    152 A.3d 581 (Del. 2016) .................................................................23

*Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel,*
    657 F.3d 1159 (11th Cir. 2011) ..........................................................4

*Peterson v. Islamic Republic of Iran,*
    627 F.3d 1117 (9th Cir. 2010) ..........................................................11

*Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado,*
    771 F.3d 980 (7th Cir. 2014) ..............................................................4

*Raji v. Bank Sepah-Iran,*
    495 N.Y.S.2d 576 (N.Y. Sup. Ct. 1985) .......................................4, 11

*Republic of the Phil. v. Pimentel,*
    553 U.S. 851 (2008)............................................................................6

*Richmark Corp. v. Timber Falling Consultants,*
    959 F.2d 1468 (9th Cir. 1992) ..........................................................13

*S & S Mach. Co. v. Masinexportimport,*
    706 F.2d 411 (2d Cir. 1983) .......................................................4, 7, 9

*Seiden v. Kaneko,*
    2015 WL 7289338 (Del. Ch. Nov. 3, 2015)........................................9

*Spring Real Estate, LLC v. Echo/RT Holdings, LLC,*
    2016 WL 769586 (Del. Ch. Feb. 18, 2016) ......................................23

*Stephens v. Nat'l Distillers & Chem. Corp.,*
    69 F.3d 1226 (2d Cir. 1995)...............................................................4

*Tepper v. Catalina Communities, LLC,*
   2009 WL 7215329 (Ariz. Super. Ct. Dec. 23, 2009)..........................20

*United States v. Bein,*
   214 F.3d 408 (3d Cir. 2000) .............................................................11

*United States v. Landmesser,*
   378 F.3d 308 (3d Cir. 2004) ...............................................................5

*Walters v. Indus. & Commercial Bank of China, Ltd.,*
   651 F.3d 280 (2d Cir. 2011) .............................................................14

*White Sands Grp., LLC v. PRS II, LLC,*
   32 So.3d 5 (Ala. 2009) .......................................................................20

**Statutes**

28 U.S.C. § 1603................................................................................14

28 U.S.C. § 1605..................................................................................5

28 U.S.C. § 1606..............................................................................4, 5

28 U.S.C. § 1607..................................................................................5

28 U.S.C. § 1608................................................................................13

28 U.S.C. § 1609......................................................3, 4, 5, 7, 9, 10, 13

28 U.S.C. § 1610..........................................................................13, 14

6 Del. C. § 1304.........................................................................15, 23

6 Del. C. § 1307................................................6, 12, 13, 15, 17, 21, 22

6 Del. C. § 1308.........................................................................15, 17

9 U.S.C. § 16 ......................................................................................4

**Rules**

Fed. R. Civ. P. 19 ...............................................................................5

## Other Authorities

1999 Delaware Laws Ch. 226, H.B. 370 ..................................................21

Uniform Fraudulent Transfer Act § 7 ......................................................6

# INTRODUCTION

Crystallex's answering brief sets up an irreconcilable conflict between federal and state law.  On the one hand, Crystallex contends that Delaware's fraudulent transfer statute ("DUFTA") bars the prejudgment transfer of the property of a foreign sovereign or foreign sovereign instrumentality if the alleged purpose of such a transfer is "to hinder, delay, or defraud" a potential judgment creditor from collecting on a future judgment.  *See* Appellee's Br. 21.  Yet, on the other hand, Crystallex concedes that the federal Foreign Sovereign Immunities Act ("FSIA") declares that the property of a foreign sovereign is immune from any court- or state-imposed process seeking to prevent the sovereign from removing or dissipating its assets before entry of an underlying judgment.  And Crystallex concedes that this is so even where the purpose of moving the property is to elude creditors.  *See id.* at 3, 20-21.

Crystallex's only justification for this conflict is to contend that Congress left an enormous loophole in the comprehensive framework of the FSIA: although states cannot authorize the attachment or arrest of foreign sovereign property before entry of an underlying judgment,

states may still make it illegal to move foreign sovereign property while an arbitration or a lawsuit against the sovereign is pending. What is more, under this loophole, a potential judgment creditor could bring a fraudulent transfer claim under state law, obtain a "judgment" against the foreign sovereign, and then use that second-order judgment to enjoin the movement of the "immune" property, order the return of any property already moved, or obtain other provisional remedies, even though the creditor did not have an underlying judgment at the time of the transfer.

There can be no question that DUFTA, as expansively interpreted by Crystallex and the District Court, would have precisely this effect. But a state law prohibiting the movement of sovereign property at a time prior to the entry of a judgment against the sovereign impinges upon the sovereign's federally guaranteed freedom to exercise dominion and control over its property. Such a law is necessarily preempted by the FSIA. Crystallex emphasizes the allegedly fraudulent intent undergirding the transfer at issue. But whether any of the defendants intended to "hinder, delay, or defraud" Venezuela's creditors is

completely irrelevant to the threshold immunity that cloaks sovereign property under § 1609 and its preemptive effect on state law.[1]

In addition, even if the FSIA does not preempt Crystallex's DUFTA claim in its entirety, Crystallex cannot escape that the plain language of DUFTA does not permit Crystallex to state a claim against a non-debtor transferor of a debtor's property.

## I. **FSIA Attachment Immunity Preempts Crystallex's DUFTA Claim Against PDVH.** [2]

This appeal presents a straightforward case of federal preemption. Under the FSIA, the U.S.-based property of PDVSA, an agency or instrumentality of the Bolivarian Republic of Venezuela, is immune from any encumbrance—whether by arrest, attachment, imposition of a security requirement, or entry of an injunction—before entry of a

---

[1] Crystallex's insistence that PDVH effectively *admitted* liability under DUFTA is misleading. *E.g.* Appellee's Br. 2, 9. Of course, on a motion to dismiss, all allegations are assumed to be true. Accepting the factual allegations at this stage hardly amounts to admitting the truth of them. As is appropriate, PDVH argues at this stage that, even accepting Crystallex's allegations, the DUFTA claim cannot stand. Moreover, PDVH has filed an answer denying Crystallex's allegations of fraud. D.I. 46 at ¶ 162.

[2] As to both of the individual issues before the Court, Crystallex chose to rewrite the specific questions certified by the District Court for this § 1292(b) appeal in an effort to deemphasize the extraordinary and unprecedented nature of its legal theories. *Compare* Appellant's Br. 17; App. 74, *with* Appellee's Br. 15.

judgment against it.  28 U.S.C. § 1609.[3] Crystallex alleges that, in

paying a dividend to PDVSA, Appellant PDVH violated state fraudulent

transfer law by transferring PDVSA's property at PDVSA's direction,

with the knowledge that PDVSA was attempting to hinder or delay

Crystallex from eventually executing upon an as-yet nonexistent

judgment against PDVSA. This claim contravenes the protections to

foreign sovereign property provided by the FSIA and conflicts with the

purposes fostered by the congressional scheme governing sovereign

immunity. Crystallex's arguments to the contrary are misguided or are

mere rhetorical distractions.

First, Crystallex's repeated citations to § 1606 of the FSIA are

irrelevant, as that section is inapplicable to—and does not modify—the

preemptive effect of § 1609 on Crystallex's DUFTA claim.  By its terms,

§ 1606 only applies where a foreign sovereign is not entitled to

---

[3] *See also* Appellant's Br. 22-24 (citing *Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 984 (7th Cir. 2014); *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1179 (11th Cir. 2011); *Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226, 1229 (2d Cir. 1995); *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983); *Raji v. Bank Sepah-Iran*, 495 N.Y.S.2d 576, 581 (N.Y. Sup. Ct. 1985)).

jurisdictional immunity under § 1605 or § 1607,[4] not where foreign sovereign *property* is *immune* under § 1609.[5]  PDVH's argument is not that the FSIA was designed "to displace state law governing substantive liability" as a general matter.  *See* Appellee's Br. 27.  But PDVH *is* arguing that the FSIA was designed to displace state law governing the immunity accorded to foreign sovereigns' movement of their property, as well as the process for attaching, executing upon, or immobilizing foreign sovereign property before and after entry of a substantive judgment.[6]  Thus, even if Crystallex might eventually be able to execute upon PDVSA's property in satisfaction of its arbitration award against Venezuela, § 1609 preempts the operation of a *specific*

---

[4] In pertinent part, § 1606 reads: "As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances."

[5] The limited effect of § 1606 is further confirmed by the canon of *expressio unius est exclusion alterius*, which holds that where Congress explicitly references a limited number of statutory provisions, it is implied that other statutory provisions are not implicated or affected.  Section 1606 only references § 1605 and § 1607— both of which relate to jurisdictional immunity, not attachment immunity.  *See Devon Robotics, LLC v. DeViedma*, 798 F.3d 136, 142–43 (3d Cir. 2015) (applying *expressio unius* to an exclusive list in 9 U.S.C. § 16); *United States v. Landmesser*, 378 F.3d 308, 313 n.8 (3d Cir. 2004) (applying the canon where specific statutes are listed).

[6] See cases cited in note 3, *supra.*

5

state law where it would restrain foreign sovereign property before entry of an underlying judgment.[7]

Second, Crystallex's contention that its DUFTA claim seeks a substantive judgment of liability rather than a formal prejudgment "attachment," *see* Appellee's Br. 17, 20, 23, fails to respond to the broader preemption analysis offered in PDVH's opening brief. Crystallex's claim was designed to secure future payment for its then-anticipated arbitral award against Venezuela. Although framed as a substantive claim sounding in tort, DUFTA is in fact a set of equitable remedies designed to aid creditors with a valid underlying claim to immobilize, attach, and recover upon property that might be hidden or dissipated before judgment. A fraudulent transfer plaintiff is not generally entitled to execute upon the immobilized or recovered property unless it has or ultimately obtains an underlying judgment. 6 Del. C. § 1307(b); Uniform Fraudulent Transfer Act § 7 cmt. 1 (Unif. Law Comm'n 1984) ("A creditor holding an unmatured claim may be

---

[7] Moreover, the District Court has held that PDVSA is in fact immune from jurisdiction in this suit, creating yet another—but as yet unlitigated—bar to Crystallex's claim. *See Republic of the Phil. v. Pimentel*, 553 U.S. 851, 867 (2008) (holding Fed. R. Civ. P. 19 required dismissal of suit where joinder of necessary party was not feasible as the party was entitled to sovereign immunity).

denied the right to receive payment for the proceeds of a sale on execution until his claim has matured, but the proceeds may be deposited in court or in an interest bearing account pending the maturity of the creditor's claim.").

In essence, then, while a prejudgment state-law fraudulent transfer claim based on the movement of sovereign property may not bear the marks of a formal attachment, its purpose and effect is to restrain the sovereign's dominion and control over its property. Courts are uniform in disregarding attempts to achieve the effect of an attachment by costuming them as other court processes or state-law requirements. *See* Appellant's Br. 23-34. As the Second Circuit has explained, the FSIA preempts not only prejudgment attachments, but also "any other means to effect the same result" as an attachment. *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983).

Crystallex, in other words, is seeking to use DUFTA as a workaround to the protections that § 1609 immunity afforded Venezuelan property during the pendency of Crystallex's arbitration proceedings. This is incompatible with the comprehensive statutory

scheme established by Congress in the FSIA, and courts have rejected similar efforts to restrain immune government property through indirect means.  *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 262-64 (1999) (explaining that because equitable liens "are merely a means to the end of satisfying a claim for the recovery of money . . . [and] merely grant[] a plaintiff a security interest in the property, which the plaintiff can then use to satisfy a money claim," an individual may not execute a lien with the "goal . . . to seize or attach money in the hands of the Government as compensation for" a separate loss where the government benefits from sovereign immunity (internal quotation marks omitted)); *Harger v. Dep't of Labor*, 569 F.3d 898, 905-06 (9th Cir. 2009) (holding that, in the context of equitable liens sought against the United States government, one may not "attempt[] to secure compensation through an indirect procedure when he cannot do so directly" because of sovereign immunity).

Third, Crystallex's attempts to downplay the potentially enormous impact of the District Court's ruling on the congressional purposes behind the FSIA are misguided.  If permitted to proceed, Crystallex's DUFTA claim would amount to a new strategy for potential creditors of

a foreign sovereign that would allow them to immobilize foreign sovereign property via state law without satisfying the procedural steps required under the FSIA.[8]  This novel legal strategy clearly flouts not only the text, but also the purpose of § 1609 immunity by providing creditors with a means to prevent the movement of foreign sovereign property prior to entry of a judgment.  *See, e.g.*, *S & S Mach.*, 706 F.2d at 418 ("[T]he FSIA would become meaningless if courts could eviscerate its protections merely by denominating their restraints as injunctions against the negotiation or use of property rather than as attachments of that property.").

Indeed, even Crystallex concedes that its DUFTA theory would result in the creation of a state-law alternative to the FSIA by which creditors of foreign sovereigns could restrain the movement of foreign sovereign property.  Appellees' Br. 23.[9]  This is a clear ground for

---

[8] Crystallex's assertion that "DUFTA expressly gives standing to those whose claims have not yet matured," Appellee's Br. 12 n.7, is irrelevant given that PDVH argues that the FSIA preempts DUFTA in this case, thus rendering inoperative any standing provision of DUFTA that is contrary to the FSIA.  Similarly, Crystallex's citations to *Seiden v. Kaneko*, C.A. No. 9861-VCN, 2015 WL 7289338 (Del. Ch. Nov. 3, 2015), Appellee's Br. 24-25, relies entirely on ignoring the fact that the absence of a D.C. Judgment at the time of the transfers triggered the FSIA.

[9] The absence of case law addressing this precise question that Crystallex highlights, Appellee's Br. 3, 17, 22, does not signal that PDVH is incorrect, but

preemption. *Cf. Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1522 (9th Cir. 1993) (applying preemption to a state law that would "subject[] trustees to personal liability on account of things they do in discharging their responsibilit[ies]" governed by federal law because such a "burden affects the trustees' conduct just as surely as direct regulation [that expressly contradicts federal law] would").[10]

Crystallex mistakenly contends that the only purpose of § 1609 of the FSIA was to circumscribe the ability of a plaintiff to obtain *in-rem or quasi-in rem* jurisdiction over a foreign sovereign by attaching its property in the United States and forcing it to come to court to release it. *See* Appellee's Br. 30-31. While that may have been one of the purposes of the FSIA in general, *see Geveke & Co. Int'l, Inc. v. Kompania DiAwa I Elektrisidat Di Korsou N.V.*, 482 F. Supp. 660, 663 (S.D.N.Y. 1979), Congress's purpose in enacting the FSIA's attachment

---

rather highlights the unique—and limited—nature of the preemption issue facing the Court.

[10] Crystallex's contention that banks and other third parties will not alter their conduct because DUFTA liability would only attach to parties who act in "bad faith" misses the point. Under Crystallex's framework, for example, a bank would be liable for "bad faith" if it was merely on notice of the existence of an arbitration proceeding before transferring a foreign sovereign asset.

immunity provisions was to avoid affronting foreign states by interfering with their property. *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1127 (9th Cir. 2010) (noting that judicial interference with the property of a foreign state "may be regarded as an affront to its dignity and may affect our relations with it"). To achieve this aim, Congress rendered a foreign sovereign free to move its property, regardless of its motive, until a creditor obtains and implements an enforceable judgment. *See, e.g.*, *Raji v. Bank Sepah-Iran*, 495 N.Y.S.2d 576, 581 (N.Y. Sup. Ct. 1985) (stating that Congress's intent was "to encompass all encumbrances and restraints imposed to prevent the dissipation of assets before judgment").[11]

Fourth, Crystallex attempts to characterize PDVH as seeking to "fabricate a purported sovereign right to commit fraudulent transfers," Appellee's Br. 3, but PDVH did not fabricate the right of a foreign

---

[11] *Cf. High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1188 (10th Cir. 2006) ("It cannot be that what one cannot achieve directly, he is permitted to achieve indirectly, especially when that end . . . was one of Congress' primary concerns when it passed [a contrary federal statute]."); *United States v. Bein*, 214 F.3d 408, 416 (3d Cir. 2000) (forbidding "a party to make a recovery pursuant to a procedural rule even though he or she would be barred from such recovery under a statute passed by Congress" because "[s]uch a result . . . would be directly contrary to the intent of Congress").

sovereign to transfer its property without encumbrance before entry of a judgment against it. Congress created that right. The FSIA affords a sovereign full dominion and control over its property until a judgment is entered and specifically prevents the prejudgment encumbrance of that property by U.S. courts for any reason, regardless of what state law may provide.

Indeed, PDVH has never argued that DUFTA must be struck down in its entirety, that a post-judgment transfer could never be considered a fraudulent conveyance, or that a creditor could not execute upon foreign sovereign property held by a third party in the United States, if the execution complies with the procedural requirements of the FSIA. Rather, because Crystallex has alleged that PDVH merely transferred foreign sovereign property to the sovereign, prejudgment, the allegations in this particular case trigger the protections of § 1609, which preempt a claim that state law prohibited PDVSA from moving or directing the movement of its own property before Crystallex had an enforceable judgment. In essence, PDVH's arguments amount to an

"as-applied" preemption challenge to DUFTA in this particular set of circumstances—not an assault on the statute as a whole.[12]

Fifth, the fact that Crystallex has now obtained a judgment against Venezuela does not cure the deficiencies in its claim or render the issues raised in this appeal moot. *See* Appellee's Br. 12-13 n.7, 20-21 n.8. A foreign sovereign is free to move its property until a creditor obtains an enforceable judgment that complies with the FSIA. *See Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 87 & n.12 (2d Cir. 2014) (refusing to order a sovereign to return funds it had removed from the United States during the pendency of an action seeking to restrain such funds).[13] At the time of the alleged fraudulent transfer, Crystallex did not have an enforceable judgment against Venezuela. Even if Crystallex could now attempt to enforce its

---

[12] Crystallex's quote from *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477-78 (9th Cir. 1992), is inapplicable. Appellee's Br. 31. PDVH does not contend that the FSIA offers it a general "'right' not to pay a valid judgment against it," but rather that Crystallex has sought to bypass the procedural requirements of the FSIA by alleging a claim that would have the effect of encumbering foreign sovereign assets in a manner prohibited by § 1609.

[13] *See also* 28 U.S.C. § 1610(c) ("No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.").

judgment against Venezuela's property, it still cannot impose liability for a sovereign's movement of property at a time when, pursuant to the FSIA, the sovereign was permitted to move it.  The later-arising judgment does not retroactively cure the *absence* of a judgment at the time of the transfer. *See* Appellant's Br. 14, 28 n.16.

Moreover, Crystallex still does not have a judgment against PDVSA, whose property is involved here, or a judgment that PDVSA's property can be used to satisfy the debts of its juridically separate foreign sovereign parent.  *See* 28 U.S.C. §§ 1603(a), 1610; *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 298 (2d Cir. 2011).

In conclusion, the FSIA sets forth comprehensive requirements governing whether and when foreign sovereign property may be immobilized by a state or federal court within the United States— whether by a writ of attachment or by other means that effect an attachment.  *See* Appellant's Br. 28-31.  Crystallex's attempts to use state fraudulent transfer law to avoid satisfying the FSIA's procedural requirements and to impose liability for transfers that PDVSA was allowed to make under the FSIA are expressly and impliedly preempted

by federal law.  Accordingly, because state fraudulent conveyance law must give way to the immunity afforded to foreign sovereign property under federal law, the Court should reverse the District Court's determination that the FSIA imposes no impediment to Crystallex's DUFTA claim against PDVH and remand with instructions to dismiss Crystallex's complaint.

## II.    Crystallex Fails to State a Claim Under DUFTA.

Regardless of the outcome of the FSIA issue above, Crystallex's Complaint further warrants dismissal because it fails to state a claim under DUFTA.  With its repeated invocation of DUFTA's "purpose" and a court's "discretion," Crystallex attempts to distort what the statute actually says.  To state a claim under Delaware's fraudulent transfer statute, a plaintiff must allege a transfer "by a debtor."  *See* 6 Del. C. § 1304(a).  To the extent such a transfer occurred, a plaintiff can then assert a claim against the "debtor," a "transferee," or "the person for whose benefit the transfer was made."  *See* 6 Del. C. §§ 1307(a), 1308(b). Nowhere does the statute authorize claims against non-debtor transferors.  The District Court therefore erred in permitting Crystallex's claim against PDVH to go forward.

In its answering brief, Crystallex clings to the fact that DUFTA recognizes liability for "indirect" fraudulent transfers and argues that such a transfer occurred here.  There are two problems with this argument.  First, in seeking to attribute PDVH's act to its corporate parent, Crystallex is attempting to pierce the corporate veil without alleging a basis for doing so.  The Complaint alleges that PDVH declared and transferred a dividend to PDVSA.  To hold that, notwithstanding the factual allegations, it was PDVSA that "really" transferred the dividend would be to disregard the corporate separateness between PDVH and PDVSA.  This is impermissible under Delaware law.  *See* Appellant's Br. 39-40.  Absent a finding of alter ego, which Crystallex has not even alleged with respect to PDVH, PDVH's action in paying a dividend to PDVSA was PDVH's act alone.  Accordingly, Crystallex has not alleged that any transfer "by a debtor" occurred.

More fundamentally, even if this Court were to accept the District Court's conclusion that PDVSA effected an indirect transfer by means of PDVH, it does not follow that Crystallex can state a fraudulent transfer claim against *PDVH*.  As noted above, DUFTA, by its plain language,

allows for claims—even those regarding *indirect* transfers—only against the debtor, transferees, and the person for whose benefit the transfer was made.  *See* 6 Del. C. §§ 1307(a), 1308(b).  Here, with respect to the relevant transfer of dividends from PDVH to PDVSA, Crystallex alleges PDVSA is all three, while it alleges PDVH is neither debtor, transferee[14], nor the person for whose benefit the transfer was made.  Hence PDVH is not a proper defendant.  This is in accord with cases cited by Crystallex in its answering brief.  *See, e.g., Fields v. Three Cities Research, Inc.*, No. Civ. 02-975-AA, 2004 WL 1173158 (D. Or. May 25, 2004) (considering Delaware law and holding that plaintiff adequately stated a claim against the *debtor* for an indirect fraudulent transfer effected through the debtor's subsidiaries).

In seeking to impose liability on PDVH as a non-debtor transferor, Crystallex is, in essence, seeking to hold PDVH liable for aiding and abetting PDVSA's fraudulent transfer.  Delaware, however, does not

---

[14] Crystallex argues both that PDVH was the transferee of a dividend declared by CITGO Holding, Inc. and that the Court should disregard the corporate form and "collapse" the series of transactions between CITGO Holding, PDVH, and PDVSA, making PDVH a transferee and transferor with respect to all of the transactions.  Crystallex's position is unsupported.  *See infra* at 23.  Regardless, with respect to the dividend payment to PDVSA, Crystallex acknowledges PDVSA is the transferee and PDVH a "non-debtor transferor."  Appellant's Br. 38.

recognize claims for aiding and abetting fraudulent transfers. *See, e.g., Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.*, Civ. A. No. 3601-VCS, 2010 WL 720150 (Del. Ch. Mar. 3, 2010); App. 13. And, although the Delaware Supreme Court has not considered the question directly, this Court can be confident in predicting that Delaware would not recognize fraudulent transfer claims against non-debtor transferors.

To understand why, it is instructive to examine the Delaware Chancery Court's approach in the *Edgewater Growth Capital* case. Despite the fact that DUFTA, as Crystallex endlessly repeats, has a "broad remedial purpose," in deciding whether DUFTA authorized claims for secondary liability, the Chancery Court started with statute's text. The court noted that "by its own terms" DUFTA "only provides for a cause of action by a creditor against debtor-transferors or transferees." *Edgewater Growth*, 2010 WL 720150 at *2. Given that the plain language of the statute did not provide for an aiding and abetting claim, the court stated that it "perceive[d] no legitimate basis for [] creat[ing] such an implied statutory cause of action by judicial innovation when the General Assembly is free to do so itself." *Id*. at *3. The same principle applies here. Because the Delaware General

Assembly did not provide for a cause of action against non-debtor transferors in the statute, there is no basis for this Court to create one.

Courts in jurisdictions that, like Delaware, have taken a "plain language" approach to interpreting the Uniform Fraudulent Transfer Act ("UFTA"), have rejected claims against non-debtor transferors.  For example, in *Ferri v. Powell-Ferri*, No. MMXCV116006351S, 2012 WL 3854425 (Conn. Super. Ct. July 30, 2012), the Connecticut Superior Court granted a motion to strike a fraudulent transfer claim against non-debtor trustee transferors under the Connecticut UFTA, stating it could find no support for the position that "a third party can be liable for making a fraudulent transfer as to a party to whom the third party is not a debtor." *Id.* at *4.  The Court took note of the plaintiff's equitable arguments in favor of non-debtor transferor liability, but concluded that it could not "ignore the plain language of the statute." *Id.*

Likewise, the Alabama Supreme Court held that the Alabama UFTA "by its plain language, does not apply to claims against third-party transferors." *Folmar & Assoc's LLP v. Holberg*, 776 So.2d 112, 118 (Ala. 2000), *overruled on other grounds White Sands Grp., LLC v.*

*PRS II, LLC*, 32 So.3d 5 (Ala. 2009). As here, the plaintiff in *Folmar* argued that the court should liberally construe the UFTA to impose liability on non-debtors who took part in a scheme to transfer funds to the debtor to the detriment of the debtor's creditors. *Id.* at 115. The court acknowledged the UFTA's remedial purpose, but ultimately found for the defendants, explaining that "[e]ven a liberal construction of the statute requires some demonstration that *the debtor* has put his property beyond the reach of a creditor." *Id.* at 117; *Tepper v. Catalina Communities, LLC*, No. C20085197, 2009 WL 7215329 (Ariz. Super. Ct. Dec. 23, 2009) (same under Arizona law); *In re Healthco Int'l, Inc.*, 201 B.R. 19, 21 (Bankr. D. Mass. 1996) (ruling that fund transfers at issue were "not transfers by the Debtor and hence are immune from fraudulent transfer attack" under federal bankruptcy law).

In its answering brief, Crystallex points to a single case, *Gutierrez v. Givens*, 1 F. Supp. 2d 1077 (S.D. Cal. 1998), where a court recognized a fraudulent transfer claim against a non-debtor transferor.[15] But

---

[15] Crystallex also cites *In re Carousel Candy Co.*, 38 B.R. 927 (E.D.N.Y. 1984), but this case is inapposite. In *Carousel*, the fraudulent transfers were effected by the debtor's attorney, who looted the debtor company assets for his own gain. The Court focused on the attorney's unique role "as [a] representative[] and agent[] of the debtor" and the attorney's "fiduciary obligation to the debtor to . . . preserve the

California, unlike Delaware, departs from the plain language of the UFTA to recognize a cause of action for conspiracy to commit fraudulent transfers. *Id.* at 1087; *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 838-39 (Cal. Ct. App. 2005). Given their markedly different approach to secondary liability, Delaware courts are unlikely to follow California courts on this issue.

Crystallex also cites Section 1307(c) of DUFTA, arguing the provision indicates that DUFTA contemplates non-debtor transferor liability. But that provision, unique to Delaware, was added to the statute in 1999 to shield attorneys, trustees and advisors from aiding and abetting liability for counseling clients or carrying out a clients' instructions. *See* 1999 Delaware Laws Ch. 226 (H.B. 370). Subsequent Delaware court decisions have found that DUFTA does not provide a cause of action for aiding and abetting, *see* supra 17-18, rendering this provision surplusage. In any event, the amended provision must be interpreted in accordance with the statute as a whole, which, as noted above, does not provide for non-debtor transferor liability. *See In re*

---

corporate integrity for the benefit of its creditors." *Id.* at 937-38. These issues are absent here.

*Citadel Indus., Inc.*, 423 A.2d 500, 505 (Del. Ch. 1980) ("[A]n amendment to an existing statute is to be interpreted in accordance with an already-established statutory scheme unless there is a clearly express intention to alter the scheme") (internal quotations omitted).

Crystallex also assures the Court that ordinary course transactions will not be affected by the District Court's unprecedented expansion of DUFTA liability, claiming that non-debtor transferors hailed before a court based on a third-party's fraudulent conduct can argue they, at least, acted in good faith. This is cold comfort. First, Crystallex assumes, without any visible support, that a good faith defense to non-debtor transferor liability exists. The District Court's opinion is silent with respect to the issue of bad faith. DUFTA is likewise silent, providing a safe harbor for *tranferees* that act in good faith, but saying nothing regarding transferors. *See* 6 Del. C. § 1307. Second, even if a good faith defense is a determined to exist, the District Court's expansion of DUFTA liability to reach non-debtor transferors will still increase the exposure of entities engaged in ordinary course transactions to expensive litigation. Even if the claims asserted against them are ultimately unsuccessful, these entities will face an increased

risk of being dragged into court by vengeful creditors of third-parties intent on chasing down any and all avenues for a potential recovery.

Finally, Crystallex's argument that PDVH may be liable in its capacity as a transferee is without merit for the reasons set forth in the District Court's opinion. *See* App. 11-12. DUFTA provides that a fraudulent transfer "is not made until the debtor has acquired rights in the asset transferred." 6 Del. C. § 1306(4). PDVSA, as a parent of PDVH, had no right in the dividend CITGO Holding transferred to PDVH. Further, Delaware has clearly rejected fraudulent transfer claims based on transactions involving property belonging to a debtor's subsidiary. *See Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, C.A. No. 7994-VCN, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016) (holding a bankruptcy trustee had no standing to challenge as fraudulent a transaction by the debtor's subsidiary) *aff'd sub nom Klauder v. Echo/RT Holdings, LLC*, 152 A.3d 581 (Del. 2016). Crystallex has not attempted to pierce the corporate veil between PDVSA and its subsidiaries, so this Court should reject its invitation to disregard the corporate form by "collapsing" the transaction and

treating the property of PDVSA's subsidiaries as if it belonged to PDVSA.

## CONCLUSION

For the foregoing reasons, and those provided in PDVH's opening brief, PDVH respectfully requests that the Court reverse the District Court's denial of PDVH's motion to dismiss the DUFTA claim against it and therefore dismiss this suit against PDVH in its entirety.

Dated: June 15, 2017                Respectfully submitted,

                                    /s/ Nathan P. Eimer
                                    Nathan P. Eimer
                                    neimer@eimerstahl.com
                                    Lisa S. Meyer
                                    lmeyer@eimerstahl.com
                                    EIMER STAHL LLP
                                    224 South Michigan Ave., Suite 1100
                                    Chicago, IL 60604
                                    312-660-7600

                                        and

                                    Kenneth J. Nachbar
                                    knachbar@mnat.com
                                    MORRIS, NICHOLS, ARSHT &
                                    TUNNELL LLP
                                    1201 North Market Street
                                    Wilmington, DE 19801
                                    302-351-9294

                                    ***Attorneys for Appellant PDV Holding, Inc.***

## COMBINED CERTIFICATIONS

### CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June 2017, I caused an electronic PDF copy of this Appellant PDV Holding's Reply Brief to be filed and served with the Clerk of the Court of the United States Court of Appeals for the Third Circuit via CM/ECF, which will send notification of such filing to counsel for Appellees who are registered CM/ECF users.

### CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this brief is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

### CERTIFICATION OF COMPLIANCE WITH RULE 32(a)

I hereby certify that this reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,045 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because the brief has been prepared in a proportional typeface using Microsoft Word 2013 in 14-point Century Schoolbook font.

## CERTIFICATION OF VIRUS CHECK

I hereby certify that the PDF version of this reply brief that is being filed electronically with the Clerk of Court through the CM/ECF system has been scanned for viruses using Sophos Endpoint version 10.7, and no virus was detected.

## CERTIFICATION OF TEXT OF BRIEF

I hereby certify that the text of the electronic brief filed on June 15, 2017 and the text of the hard copies of the brief is identical.

Respectfully submitted,

/s/ Nathan P. Eimer
Nathan P. Eimer
neimer@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60604
312-660-7600

***Attorney for Appellant***
***PDV Holding, Inc.***